No. 7.—JOHN H. HOWARD and others, plaintiffs in error, *vs.* JOHN DILL & Co. defendants.

[1.] A distress warrant for rent, under the Act of 1811, which is issued on the oath of an agent, is irregular and void; it can only issue on the oath of the person to whom the rent is due.

Rule against the Sheriff, in Randolph Superior Court. Decided by Judge WARREN, April Term, 1849.

John H. Howard and James M. Chambers, plaintiffs in three distress warrants, issued against one John McIver Davis, by a *rule nisi* in Randolph Superior Court, called upon the Sheriff to show cause why he should not pay over to them money in his hands, arising from the sale of property of the defendant under these warrants.

Howard and others *vs.* Dill & Co.

The Sheriff returned, that he had in his hands the sum of $359, from sale of six mules, sold under said warrants, that the same were levied on previously by an attachment in favor of John Dill & Co. which attachment had been carried to judgment, and a *fi. fa.* issued thereon, in his hands, claimed the money. The distress warrants were older than the judgment on attachment.

Upon the making of this return, Messrs. A. McDougald and Jones & Caruthers, as attorneys of John Dill & Co. moved the Court to postpone the lien of the distress warrants, among other grounds, "because it did not appear that the plaintiffs in the distress warrants had made application for the same, or made oath in writing, of the amount of rent due, but that the affidavit, in each case, was made, subscribed and sworn to by one Mansfield Torrance, purporting to be an agent for each of said plaintiffs."

The plaintiffs in distress warrants objected to this motion, because John Dill & Co. were strangers to the proceeding before the Court, and could not be heard therein.

The Court overruled the objection, and on argument, sustained the motion on the ground above stated.

To these decisions of the Court, counsel for Howard and Chambers excepted, and error has been assigned thereon.

H. L. Benning, for plaintiff in error.

A. McDougald, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

It is argued that these plaintiffs in attachment are strangers to the cause between the plaintiff, in the distress warrant, and his tenant, and ought not to be heard against the validity of the warrant. Pending the litigation, they could not be heard, unless made a party regularly. They could not be heard in the issue on the warrant between the plaintiff and his debtor. The matter here is wholly different. The attachment creditors hold liens against the money now in the hands of the Court. The plaintiff in the warrant also holds a lien upon it. Their respective liens have been consummated, and their claims against the common debtor are all, as they insist, established. There is no contest here between any one of them and the debtor. The contest is as to who shall have

the money.   The Court sits as a Chancellor to distribute it.   It is his duty to give it to the highest valid lien.   To do so, he must look at, and inquire into the liens themselves, and ascertain whether they are regularly sued out and legally valid.   This it is his duty to do of his own mere motion; and all the claimants on the fund have a right to be heard in support of their own liens, and against all others.   Each has the right to move to postpone or set aside any claim which conflicts with his own.   All are parties before the Court.   This is so common a thing, in the distribution of money, that I was surprised to hear it questioned.

Again, it is insisted, that if there be irregularity in the suing out of the distress warrants, it has been cured by the failure of the defendant to except to it at the proper time, and by his acquiescence for a long time.   There are cases, no doubt, where a defendant in a judgment may be himself estopped, by long acquiescence, from denying its validity.   I do not say that this is one of them.   I do not think it is.   But if it were, failure to except to the irregularity and acquiescence in it, cannot affect the rights of third persons. They are not estopped by the negligence or waivers of the defendant.   They are not his privies.   The warrant may be assailed by them, and if irregular, set aside; even, although, as against the tenant, it might be held valid.

[1.] The objection made to this warrant is, that it is issued on the oath of an agent, when it can alone legally issue on the oath of the creditor himself.   The objection is fatal to the warrant.   The Act of 1811 declares, that "From and after the passage of this Act, it shall and may be lawful for any person who may hereafter have rent due, when the same does not exceed thirty dollars, to make application to any Justice of the Peace within the District, where his, her or their tenant, may reside, and obtain from such Justice, a distress warrant for the sum claimed to be due, on oath in writing, for the said rent, and the same may be levied," &c.   The Act makes these requirements equally applicable to cases where the sum exceeds thirty dollars.   *Prince*, 687.   The necessary construction of this Act is, that the oath must be taken by the creditor. *Any person*, who may have rent *due him,* is entitled to the warrant; *any person* may make application to a Justice for it.   The warrant is *obtained* for the sum claimed to be due.   Due to whom? Clearly, to the person who makes the application, and not to another.   And how is the rent to be claimed *to be due?*   Why, on

Howard and others *vs.* Dill & Co.

*oath in writing.* Who, then, is required to make the oath ? Beyond question, the person who makes the claim, and to whom the rent is due—the creditor himself. It requires the powers of a very astute logician to give to this Act any other meaning, having the least claim to plausibility.

The requirement of the creditor's oath is founded too in good reasons. The remedy given for the collection of rent, is rapid and summary. The Legislature, no doubt, felt the necessity of protecting it from abuse—of throwing around the tenant some safeguards—some guaranties against unfounded and vexatious suits for rent. Hence, they prescribe as a condition precedent, that the applicant for the warrant—the creditor—should swear that the rent is due. Without this, the warrant cannot legally issue. The safety of the tenant is found in the *oath* of the landlord, and in the responsibilities which his oath imposes—in his liability to the pains and penalties of the law, if he swears falsely. This security is weakened—not to say lost—if the oath of an agent is held sufficient. His oath casts no responsibility upon his principal, and comparatively little upon himself. He may believe the rent is due, when in fact it is not. The allowance of the oath of an agent in these cases, would open a wide door to frauds and perjuries, and leave the tenant subject to oppression. This Act, and all others which give peculiar and summary remedies, are to be construed strictly; and he who would avail himself of them, must bring himself strictly within their requirements. It is said, that what a man may lawfully himself do, he may do by his agent. This is a rule of the law; but it extends not to oaths—to acts which are strictly personal. One cannot delegate the right to swear; one cannot much more delegate the *obligation* to swear. The duty is one that refers to *his* mind and conscience. He may not swear by proxy. In all similar cases, the Legislature has, by law, authorized the oath of the agent, which shows, that before such express grant, the oath of an agent was held to be insufficient.

Let the judgment below be affirmed.