## McDONALD v. LEONARD BROS.

### No. 13979.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 3, 1939.

Rehearing Denied Dec. 8, 1939.

L. J. Wardlaw, of Fort Worth, for appellant.

Todd, Crowley & Thompson, of Fort Worth, for appellee.

SPEER, Justice.

This suit originated in the Justice's Court when Mrs. Eva McDonald, a feme sole, sued Leonard Brothers, a private corporation, for $160, for the conversion of a Chevrolet automobile. The case was subsequently appealed to the County Court, and by due order transferred to the County Court at Law No. 2, where it was tried, resulting in an instructed verdict for the defendant. Mrs. McDonald perfected her appeal to this court, and will be designated appellant here, and defendant below will be referred to as appellee.

The record reflects that appellee was, on December 30th, 1933, operating a department store in the City of Fort Worth, and across the street from its store building, kept, maintained and operated a free parking lot for automobiles, to accommodate the public. In connection with the parking lot, appellee also operated a filling station for the sale of gasoline, oils and such merchandise as is commonly sold at such places.

Appellant's car was driven by her daughter onto appellee's parking lot for storage and retention by the care-takers, until the daughter could do some shopping. The care-taker detached from a duplicate number card a stub, giving one part to the driver of the car, and retained the other part, to be placed on the car for identification when it should be demanded.

Inside of an hour from the time the car was left, the daughter returned to the parking lot, presented her identification card and called for the automobile. The attendants made diligent search, as did the daughter and her son, but neither could locate it. The attendant of the parking lot said that he must have delivered the car to some other person, through mistake.

This suit resulted from the failure of the appellee to return the car when requested to do so. Appellant's allegations were substantially like the statements above made by us. In addition she plead that when the car was so left with appellee, a contract of bailment was created between the parties, and appellee was obligated to redeliver the car upon presentation of the identification ticket. It was further alleged that the failure of appellee to return the car upon demand and presentation of the ticket constituted a conversion by it of the automobile. Allegations

were made that the car was of the reasonable market value of $320 when delivered to appellee; that subsequently the car was found after it had been stripped of many parts and otherwise badly damaged. In its damaged condition it was returned to appellant, but that it was only reasonably worth $160 in the condition it was in when returned; that the proximate cause of the damage to the car was due to the conversion by appellee. There is an alternative plea to the effect that if appellant is mistaken in her claim that her car was delivered by appellee to some person not entitled to receive it, and that such acts constituted a conversion by appellee, then she alleged in adequate terms that because of the location of the parking lot, the number of employees maintained by appellee on the premises and the time of the day upon which the car disappeared, appellee was guilty of gross negligence in permitting some person to steal the car from the parking lot. Prayer was for $160, the amount of damages sustained.

Appellee answered by general denial and by special plea that if the car of appellant was left on its parking lot at the time complained of by her, then same was left in appellee's free parking lot without any agreement to pay therefor, but purely as an accommodation to appellant; that no charges were made by appellee for the parking and none was contemplated between the parties. That under such conditions, while the car was thus parked on its lot, some person without appellee's knowledge or consent stole the car or took it by fraud and deception, without fault on the part of its agents.

A jury trial was demanded, but at the conclusion of the testimony, at the request of appellee, an instructed verdict in its favor was ordered. From a judgment entered thereon, this appeal has been perfected.

Only a small amount is involved, but this has not deterred us from making a close study of the very interesting question involved. Both parties requested summary charges; appellant's request was refused and, as stated, appellee's was given. Error is assigned, (a) because appellee's request was granted, and (b) because appellant's motion was overruled.

There is little or no conflict in the facts as detailed by the witnesses. Appellee operates a large department store in its building of two or three stories and a basement, covering an entire block in the City of Fort Worth, Texas. Just across an adjacent street it also maintains a "free" parking lot for automobiles. On this lot it also maintains a filling station for the sale of gasoline and lubricants. Four or five attendants care for the filling station and as many are employed to look after cars which are parked there by persons desiring that service. No charges are made for parking; when a person drives his car onto the lot, an attendant severs a perforated ticket, containing duplicate numbers, gives one part to the owner and attaches the other to the car. When the detached part is presented to the attendant, the car bearing the corresponding number is delivered. On December 30th, 1933, appellant's car was parked by her daughter on the lot, while she went to the department store to do some shopping. When the daughter returned and presented the ticket, calling for the car, it could not be found. The attendant told appellant's daughter that he must have delivered the car to her husband; she told him she had no husband. Nothing was paid or promised for the privilege of parking on the lot. Melvin Cagle, a son of appellant's daughter, said he was with his mother both when the car was left at the parking lot and when she returned for it. Witness testified to matters above set out, and further that the purpose for which his mother parked the car at this lot was because she was going to buy some groceries at Leonard Brothers (appellee). No one at the parking lot told the daughter that she would be expected to trade at appellee's store if she parked free at the station. Mr. Buchanan, who was the manager of the parking lot at the time the car was lost, but not so employed at the date of trial, testified that no charge was ever made for parking while he operated the lot. The public was at liberty to park there free without restrictions as to where they should trade. People were at all times permitted to park there and trade where they chose. On cross examination, he testified that so far as he knew, the purpose in maintaining the parking lot was for use by the public. He did not imagine that if appellee had not maintained its store there, it would have kept the free parking lot. He said he was sure that the reason appellee maintained the free parking lot was because it thought more patronage would come to its store on that account. Other undisputed testimony dis-

closed that the car was subsequently found after it had been stripped of many accessories and otherwise damaged. That parts and labor necessary to rehabilitate it would reasonably cost $160.

We think the court committed reversible error in giving the peremptory instruction for a verdict in favor of appellee.

In its brief replying to appellant's assignments of error, the appellee makes this statement: "The appellee in the instant case pitched its entire defense to appellant's cause of action upon the theory that Leonard Brothers (appellee) was operating a free parking lot, from which the car belonging to appellant, Mrs. Eva McDonald, was stolen by some unknown third person on or about December 30th, 1933. It is the position of the appellee that when Mrs. McDonald's car was brought to this parking lot and was parked thereon, without charge to her or her representative, the relationship of bailor and bailee was created, and such bailment was purely gratuitous in its nature. Absent any showing whatever of gross negligence, culminating in the theft of this car upon the part of the appellee, its agent, servant or employee, it is the appellee's contention that no liability rests upon it for theft of the car and the resultant damages sustained by appellant, Mrs. Eva McDonald."

The foregoing frank statement of appellee's contention in this case brings us unmistakably to view this appeal from the standpoint of an instructed verdict for appellee, obviously based on that theory of the law announced. In the first place, we do not think that the record will support a legal conclusion that the bailment was a gratuitous one. True, it was shown in so many words that appellant's daughter paid nothing for the service and no compensation was demanded of her. Yet it is equally clear that the reason appellee maintained this "free" parking lot was because it believed business to its store would be enhanced, and further that if it had not so believed the "free" parking lot would not have so been kept by it. We think that such a purpose by appellee, whether profitable or not, would be a sufficient consideration for the parking to take the case out of one of a pure gratuity. Many acts of a merchant, such as was appellee, which serve and are beneficial to the public without extra charge or expense, are practiced; they tend to create good-will from the public to the business—a thing much desired by all business concerns. A well arranged show window, lounges, rest rooms, comfortable chairs, fans in warm weather and heating devices in cold weather; these are all free and the public pays nothing directly for their use; nor is anyone required to be a customer before he or she may have access to them. They are furnished for the purpose of attracting the public and constitute a silent invitation to trade at that store. We think the free parking lot maintained by appellee falls within the classes above mentioned. The undisputed evidence given by appellee's manager of the lot indicates this. Dallas Hotel Co. v. Richardson, Tex.Civ.App., 276 S.W. 765; 5 Tex.Jur., page 1015, § 5 (cited by appellee). In the last cited authority we find this rule laid down: "In determining whether a bailment is gratuitous or lucrative, the court has said that inquiry is not directed to the character or certainty of the benefit or profit, but to whether the bailment was accepted for the purpose of deriving the one or the other. Generally, if the bailment was made at the instance or on the invitation of the bailee because of benefits, direct or contingent, expected to accrue, or on a contract, express or implied, having a legal consideration, it is not gratuitous."

In the next place, appellee's proposition upon which it rests its defense necessarily implies that the car was stolen from the parking lot, and that before recovery could be had by appellant, she must establish gross negligence by appellee. The testimony to which we have already referred indicates that the car was not stolen but delivered by appellee's attendants, through mistake, to some other person than the owner. It was only by alternative allegation that appellant charged that the car was stolen. There is some evidence which was admissible upon that theory, such as the nature of the parking lot enabling the attendants to observe theft and the number of attendants on duty on the occasion in controversy. But we shall devote our attention more especially to the first allegations made by appellant, to the effect that a contract of bailment was breached and that the car was converted by appellee when it was delivered to the wrong person.

Central Meat Market v. Longwell's Transfer, Inc., Tex.Com.App., 62 S.W.2d 87, in an opinion adopted by the Supreme Court, thoroughly discussed the subject

now under consideration. In that case plaintiff below parked his car with defendant, paying the usual and customary parking fees. The defendant gave the car owner a ticket or card bearing a number corresponding with a similar one placed on the car; on that ticket there was a provision that defendant was not responsible for fire or theft. The car was taken out by a third party under a trick amounting to theft by deception and fraud. When the owner called for his car and presented his claim check, the misdelivery was discovered. The opinion states that the question of what is bailee's liability when a car is accepted for hire and a misdelivery has been made, had not previously been passed upon by the Supreme Court of this State. It is there said that under such circumstances a misdelivery is conversion by the bailee. Decisions of other jurisdictions are quoted from, at length. From English Common Pleas, Stephens v. Kent, 4 Bing. 476, 130 Eng.Rep. 851, the court quotes: "If trover will lie against a common carrier or a warehouseman for a misdelivery, it can under like circumstances be sustained against a bailee for hire, or a gratuitous bailee." From Hall v. Boston & W. R. Corp., 14 Allen, Mass., 439, 92 Am.Dec. 783, this expression is quoted: "The action of trover is not maintained by proof of negligence, but only of misfeasance amounting to a conversion. And a delivery to an unauthorized person is as much a conversion as would be a sale of the property, or an appropriation of it to the bailee's own use. In such cases neither a sincere and apparently well founded belief that the tortious act was right, nor the exercise of any degree of care, constitutes a defence even to a gratuitous bailee." This is quoted from Murray v. Farmers' & Merchants' Bank, Mo.App., 206 S.W. 577: "Where bailee delivers the property deposited to person other than bailor, he determines the right of such person to the bailment at his peril and is liable for wrongful delivery, regardless of negligence." The above case involved the liability of a bailee of a note, when it had been misdelivered. Based upon the authorities mentioned by us and many more cited, Judge Sharp, speaking for the court, concludes that a bailee of a car, for which a claim check has been issued, is liable to the owner of the car for loss by misdelivery to a third person not entitled to it,

although the bailee was guilty of no negligence.

To the authorities above cited may be added Citizens' Nat. Bank of Jasper v. Ratcliff & Lanier, Tex.Com.App., 253 S. W. 253. That case involved a bailment by a customer of the bank to the institution of certain liberty bonds with instructions to sell and place the proceeds of sale to the customer's account. The bonds were lost in the U. S. mail. It was held that although there was no specific promise by bailors to pay for the services requested, the prospect by bailee of getting the proceeds of the sale left on deposit for an indefinite time, was sufficient consideration. It further held in that case that a direct charge for services was not necessary to constitute a bailment for hire, if the bailment is incidental and beneficial to the bailee's business.

We hold that the evidence was sufficient to entitle appellee to have her case go to the jury to determine from the facts whether or not appellee was a bailee for hire, under proper definitions and explanations of those terms.

There is no testimony, insofar as we can find, in the record tending to show that the car in question was stolen, nor are we ready to say that in the absence of the condition in the contract of parking, which would limit appellee's liability in case of theft, that a different rule would be involved, if the car had been stolen; for, as above shown, we think there is evidence sufficient to support a finding that the bailment was for hire.

The appellant would not be entitled to a reversal and rendition of the judgment in her favor, as claimed in the second assignment of error, even if no question of fact was involved in regard to the nature of the bailment. Her action was primarily for the difference in the value of the car when it was parked and its reasonable market value in the condition in which it was returned. Her proof consisted of the reasonable expense of repairs. This was not the measure of damages plead and relied upon by her.

For the reasons shown, we hold that the trial court erred in instructing the jury to return a verdict for the appellee. The judgment of the trial court is accordingly reversed and the cause remanded for another trial.