## BAR ASS'N OF DALLAS et al. v. HEXTER TITLE & ABSTRACT CO.

### No. 14566.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 8, 1943.

Rehearing Denied Nov. 12, 1943.

R. Guy Carter, C. K. Bullard, C. C. Renfro, and Wm. P. Goar, all of Dallas, for appellants.

Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellee.

SPEER, Justice.

This suit was brought for the purpose of enjoining the defendant, Hexter Title and Abstract Company, a private corporation, from doing certain acts which are alleged to be in violation of the provisions of Article 430a of Vernon's Penal Statutes of Texas; such statute having for its purpose the prevention of any corporation, person, firm, or association of persons from practicing law in Texas, excepting natural persons who are regularly admitted and licensed members of the bar.

The defendant, in the conduct of its business, is the lawful agent of an insurance company that issues title insurance policies on properties in Texas.

The record discloses that the first suit brought against the defendant was instituted in the name of The Bar Association of Dallas, a corporation, and joining in the petition were David B. Love, Sam Boren and A. J. Roberts, all being resident lawyers, duly licensed to practice law in Texas.

Boren and Roberts withdrew as plaintiffs before trial was had.

The second suit was instituted by the Grievance Committee of the State Bar of Texas for the Fifth Congressional District, composed of Wm. P. Goar, C. K. Bullard, David B. Love, M. M. Crane, Jr., Norman Hamilton, C. J. Shaeffer, Frank Cain, Dallas Blankenship and Adair Dyer, who are admittedly duly licensed and practicing lawyers of Dallas, Texas.

Pleas in abatement were addressed to both of the petitions and, after the trial court consolidated the causes, the plea was sustained as to the first petition.

The order on the plea recites that the suit was filed without authority from the corporate plaintiff, The Bar Association of Dallas, and that such corporation has no legal authority to prosecute the suit; that the grounds of the plea in abatement constitute matters which may not be cured by amendment; and the trial court taxed all costs incurred in such suit against the individual plaintiffs who joined the Bar Association in the suit.

We gather from the trial court's order that the suit was left pending with the natural person, David P. Love, as plaintiff.

The plea in abatement addressed to the second suit was overruled, and the cause was tried to the court without the assistance of a jury.

The parties stipulated as to the facts, and the defendant admitted the following:

"1. Plaintiff The Bar Association of Dallas is a non-stock corporation organized and existing under and by virtue of the laws of the State of Texas with its principal office and place of business in Dallas, Dallas County, Texas, having as members only persons licensed to practice law in Texas; plaintiffs David B. Love, Sam Boren and A. J. Roberts are members of the Unauthorized Practice Committee of the Bar Association of Dallas, and are each individuals licensed to practice law and are residents of Dallas, Dallas County, Texas; and defendant Hexter Title & Abstract Co., Inc., is a corporation organized and existing under and by virtue of the laws of the State of Texas 'to make, compile and own abstracts of title to land and liens of any character on any property or any other abstracts of record in this state or county thereof required by law' with its principal office and place of business in Dallas, Dallas County, Texas, where it has an agent upon whom service may be had.

"2. Defendant has heretofore furnished opinions as to conditions of title to real estate but has discontinued such practice more than three months prior to the filing

of this cause and does not intend or purpose to engage in such course of conduct.

"3. Defendant's officers, agents and employees, with its approval and authority, have heretofore prepared, and are now preparing and, unless restrained, will in the future prepare for execution by persons not employed in its business (a) deeds conveying land in which it owns no interest and does not acquire an interest by such deeds, (b) notes, mortgages and deeds of trust in which it has no interest as borrower or lender, (c) mechanic's and materialman's lien contracts to which it is not a party, (d) releases, transfers, subordination agreements and other instruments affecting the title to real estate and liens thereon in which it does not own and is not acquiring an interest therein, and (e) such additional instruments as may be necessary in connection with perfecting the titles upon which it is issuing or plans to issue title policies. Most of such instruments have been and hereafter will be prepared in connection with transactions in the course of which defendant issues or obligates itself to issue policies of title insurance. The defendant has occasionally in the past and will occasionally in the future prepare some or all of the foregoing instruments for execution by persons not employed in its business in connection with transactions in which it does not issue or is not obligated to issue policies of title insurance but has prepared an abstract of title.

"4. No separate charge is made by defendant for such service set forth in paragraph 3 but defendant is obligated to and does charge premium rates for title insurance policies as fixed by the Insurance Commissioners of Texas. Such regulations prescribing the schedule of fees for title insurance include a provision that such charges include 'the fee for insurance, title examination and closing of deal, no other services.' and that 'fees for all other services such as conveyancing, escrow and inspection shall be the customary fee for such services in the particular county in which the service is being rendered.'

"5. Defendant has in its employ four licensed attorneys who supervise the preparation and execution of the instruments listed in paragraph 3 hereof and advise the interested parties the purpose and effect thereof but who do not perform any other legal services on behalf of defendant for patrons and customers of defendants.

"6. Defendant does not advise persons, firms and corporations as to their legal rights except as to the purpose and effect of the instruments drawn as set out in paragraph 3 and in the manner set out in paragraph 5.

"7. Defendant holds itself out to perform such services for its customers and as possessing authority to render services for them, as set forth in paragraph 3 hereof, which services defendant does not agree constitute 'legal services', but other than such services, defendant does not hold itself out to perform legal services for its customers and as possessing authority to render legal services for them which require the use of legal knowledge or skill.

"8. Defendant openly solicits employment verbally and by advertisement, for the preparation of abstracts and the issuance of title policies and in connection with the issuance of title policies represents that it will prepare, in connection therewith, instruments set forth in paragraph 3, but does not otherwise solicit legal employment nor does it induce its customers and the public to place themselves at the mercy of defendant and its employed legal staff.

"9. The individual plaintiffs, as individuals and in the name of the corporate plaintiff, have requested defendant to cease and desist from further commission of the acts set forth in paragraphs 3, 5, 7 and 8, but defendant has refused to desist and has advised plaintiff that it would continue such course of conduct.

"10. Forms for title insurance policies are prescribed by the Board of Insurance Commissioners of Texas and specimen policies are attached hereto, an owner's policy being marked Exhibit A and a mortgage's policy being marked Exhibit B.

"11. The business of the defendant unless and unto the extent only that the foregoing shows, has been conducted in accordance with the rules and regulations of the State Board of Insurance Commissioners.

"12. Defendant does not direct or attempt to control the employment of counsel in any litigation necessary to perfect title to real estate for the purpose of procuring the issuance of title policies by the company.

"13. Defendant, by contractual arrangement, is engaged in writing policies of title insurance issued by a corporation authorized by charter to issue title insurance policies and defendant is the agent for said issuing company as empowered by the title insurance act."

It is further stipulated that, as to paragraph 7 of the agreed facts, the acts performed by the defendant's attorneys were done at the instance and under the direction of executive officers of defendant, who told such attorneys the kind of instruments to draw and what subject matter should be placed therein, and that the customer did not instruct the attorneys as to the kind of instrument to draw and such attorneys told the customer the purpose and legal effect thereof.

As to paragraph 8 of the agreed facts, it was stipulated that, while the act was ministerial and performed at the request and under the direction of the person for whom the service was rendered, in many instances, such acts were done under and at the direction of executive officers of the defendant and at a time when the persons who drew the instruments had never seen the customers and never saw them until the transaction at hand was ready to be closed; and that such are the facts where a notary public prepared the instruments.

On the stipulated facts, the trial court rendered the following judgment:

"On this 31st day of December 1943, the above case came on for trial, when came the parties and in open court entered into written stipulations as to the pertinent facts, and agreed that the case might be considered by the court on written briefs to be filed.

"Thereafter, the parties having filed their briefs, the court, having considered the facts and the law, is of the opinion that the plaintiff is not entitled to the injunction prayed for, except as to the preparation of conveyances or other instruments affecting the title to lands, when not incident to transactions in which defendant is requested or expected to issue policies of title insurance.

"It is therefore, on this 23rd day of February, 1943, ordered and decreed that the Hexter Title & Abstract Company be and it is hereby perpetually enjoined from preparing for other parties, by and through its employees, agents, attorneys, and servants, conveyances or other instruments of writing affecting the title to land save and except in connection with transactions 'in which it issues or is requested or expected to issue policies of title insurance. The petition for injunction in all other respects is hereby denied.

"To which order in open court both plaintiff and defendant excepted and gave notice of appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District sitting at Dallas, Texas."

From this judgment the plaintiffs have appealed on the theory that the relief granted is insufficient.

This being an action seeking injunctive relief, we are of opinion that we should brush aside all matters save those that go to the merits of the suit, if we may do so without violating any substantial right of any of the parties hereto.

It is contended by appellee that none of the parties plaintiff are lawfully authorized to bring such a suit as is before us—that they have shown no justiciable right.

This contention is made on the theory that the provisions of Article 430a of the Penal Code and Section 5 thereof, which recites that the county attorney, or the district attorney, or the criminal district attorney of any county in Texas shall on his own initiative or upon the application of any Bar Association in Texas bring action in the name of the State of Texas in the proper court to enjoin any person, corporation or association of persons from violating the provisions of said Article 430a.

We are not inclined to view the statutory provisions as prescribing the sole and exclusive remedy.

We believe that any interested lawyer, or group of lawyers, or any Bar Association composed of licensed Texas lawyers, may avail themselves of the right to enjoin violations of such act, regardless of whether or not any of the public officers named in the act joined in the suit, or offered to prosecute same.

Because of the views expressed, we think the trial court did not err in overruling the second plea in abatement, and we are of the further opinion that the trial court was in error in holding that the Bar Association of Dallas has no legal authority to bring this character of suit; but the ruling that the plea in abatement as to such Association should be sustained is

sound under the finding by the trial court that the suit was instituted in its name without authority from it.

In State Bar of Oklahoma v. Retail Credit Ass'n, 170 Okl. 246, 37 P.2d 954, we find an able presentation of sound reasons why the State Bar of Oklahoma was held to be vested with the right to bring suit for injunctive relief, such as is sought in the instant case.

In that opinion the court holds that the suit was brought primarily to protect the public, and the fact that the plaintiffs sought no money damages furnished no barrier to the right to restrain the unlawful acts alleged.

We are of opinion that statutes enacted to prevent the unauthorized practice of dentistry, medicine, surgery and law all find their origin in the desire of our law-making bodies to protect the public, and that the genesis thereof is not born of a desire to protect the business of the dentist, the physician, the surgeon and the lawyer.

In the year 1939, the Legislature of Texas passed the bill designated and known as the State Bar Act. It is now Article 320a—1 of Vernon's Texas Annotated Statutes. By virtue of this law, all duly licensed lawyers in Texas are qualified to become members of the State Bar, and all persons who do not become members of the State Bar are prohibited from practicing law in the State of Texas.

This statute empowers the Supreme Court of Texas to "prepare and propose rules and regulations for' disciplining, suspending, and disbarring attorneys at law; for the conduct of the State Bar; and prescribing a code of ethics governing the professional conduct of attorneys at law". Vernon's Ann.Civ.St. art. 320a—1, § 4.

■ Early in the history of the State of Texas it was generally recognized and conceded that the right to prescribe rules of practice and procedure in this State rested in its law-making bodies, and our statutes reflect the fact that the Legislature from time to time relinquished to the Supreme Court the right to make certain rules only. This state of affairs continued until the 46th Legislature, in the year 1939, passed House Bill No. 108, Vernon's Ann.Civ.St. art. 1731a, which evidenced the will of the law-making body of Texas to relinquish the rule-making power to the Supreme Court.

The first section of the Bill declares: "In order to confer upon and relinquish to the Supreme Court of the State of Texas full rule-making power in civil judicial proceedings, all laws and parts of laws governing the practice and procedure in civil actions are hereby repealed." Vernon's Ann.Civ.St. Art. 1731a, § 1.

The act further provides that such rules shall not abridge, enlarge or modify the substantive rights of any litigant.

As a check-rein, it will be observed that the Legislature reserved unto itself the right to *disapprove* any rule that may be proposed by the Supreme Court.

We find a published volume designated as "Rules Governing the State Bar of Texas", and under Article XII, Section C, subsection 35, are the following provisions:

"Grievance Committee May Investigate. Each Grievance Committee, in its respective district, shall have power and authority, and it shall be its duty, to investigate the practice of law by persons not authorized to do so under the laws of this State and these Rules, and to receive complaints of such unauthorizd practice. Each Committee shall make such investigation as it deems appropriate.

"In conducting all such hearings and in making such investigations, each Committee shall have authority to hear and examine witnesses under oath and to examine all books, papers, documents or other writings necessary or material to the inquiry. Any person accused of such unauthorized practice shall be given notice, as the Committee may provide, and shall have an opportunity to be heard, and shall have the same rights as are given an accused member by the provisions of Section 28 of this Article. He may also request the Committee to notify witnesses to appear in his behalf at his expense.

"The provisions of Sections 25, 26, 27, 29, 30 and 31 of this Article shall apply, insofar as applicable, to such investigations, hearings and proceedings before the Committee, and examination of witnesses before a District Judge. All such provisions conferring rights upon an accused member shall inure to the benefit of the person so charged.

"Each Grievance Committee may institute and prosecute appropriate suits or proceedings, in the name of the Committee, or any member thereof, or any party complaining, as may be advisable in the opinion of the majority of the Committee, to suppress, prohibit, or prevent such unauthor-

ized practice of the law, or may take such other action as it deems advisable under the circumstances, such as the filing of criminal charges or complaints. Such suits, proceedings, complaints, or criminal charges shall be prosecuted by a member or members of the Committee, or by members of the Bar, as may be determined by the Committee.

"The Board of Directors may from time to time employ a suitable person or persons to make investigations of such unauthorized practice of law, and to perform such other duties as the Board may require, such persons to receive compensation as fixed by the Board.

"These rules shall be cumulative of all laws of this State relating to the unauthorized or the unlawful practice of the law."

The defendant, in the cause before us, contends that the Supreme Court has not been empowered, by any of the Acts referred to above or by any other act of the Legislature, to put into force the above-quoted rule covering the unauthorized practice of law, at least insofar as it may be applied to such situations as are disclosed in the instant suit.

Taking the view that we do of this case, we do not feel called on to pass upon the right and power of the Supreme Court to promulgate such rule.

■ We believe that the suit may be properly instituted irrespective of the rule, and that the rule, if valid, is only cumulative in its scope. Sharp-Boylston Co. v. Haldane, 182 Ga. 833, 187 S.E. 68, Depew v. Wichita Retail Credit Ass'n, 141 Kan. 481, 42 P.2d 214.

Having given a word picture of what was before the trial court and the decree rendered, we come to a consideration of the merits of the case.

Section 3 of Article 430a, Penal Code, definitely prohibits corporations from practicing law, as that term is defined by the Code. The same section enumerates many things they may do which do not fall within the inhibition, but there is no contention made by defendant that it comes within such exceptions.

Section 2, Article 430a P.C., relied upon by plaintiffs for the relief sought, insofar as applicable here, reads: "Sec. 2. * * * Whoever, (a) * * * or, (b) For a consideration, reward or pecuniary benefit, present or anticipated, direct, or indirect, advises or counsels another as to secular law, or draws a paper, document or instrument affecting or relating to secular rights; or, (c) * * *; or (d) * * *, or (e) * * *; is practicing law." There are further provisions that nothing in the act shall be construed to prohibit persons or corporations from preparing abstracts of title, certifying, guaranteeing or insuring titles to property, real or personal, or an interest therein, or a lien or encumbrance thereon, and further provides that no corporation shall prepare legal documents not relating to its authorized business.

■ We have seen that a corporation such as defendant cannot legally engage in the practice of law. Under the provisions of the statute quoted above, those who, for a consideration, direct or indirect, draw papers, documents and other instruments affecting secular rights of others, are practicing law. We think that the facts stipulated in the third section above show conclusively that defendant is doing those identical things. To bring the facts within those prohibited, the service must have been for a consideration, either direct or indirect. By stipulation 4, no separate charge is made by defendant for the services performed and set out in stipulation 3, but that defendant's charges are the premiums, rates for which are fixed by the Insurance Commissioners of Texas, for title insurance policies.

Stipulation 13 is to the effect that defendant corporation is engaged in compiling abstracts of land titles and is agent for another corporation authorized by law to guarantee real estate titles and that defendant as such agent issues the policy. The manner in which defendant receives its compensation for procuring orders for and issuing the policies is not disclosed, nor do we think it material. We may fairly assume that it is compensated therefor. We do know that under stipulation 7, defendant holds itself out to the public as having authority to render the additional services of preparing the documents enumerated in stipulation 3. These are deeds, deeds of trust and other kinds and forms of liens, usual and customary in conveying the title to lands from one person to another, reserving liens, and creating new ones; that in such instruments defendant takes no interest in titles conveyed nor has it any interest in liens reserved, created or secured.

It is obvious that defendant is securing all the business it can by holding itself out

as being willing to perform this extra service promised in stipulation 3, for collecting the premiums paid for title insurance policies and compiling abstracts of title to the lands involved.

■ The consideration or inducement held out to the public for the enhancement of the volume of defendant's business, may or may not prove beneficial to it, this is beside the question, if defendant is motivated thereby, to draft deeds of conveyance for other persons, under which conveyance it receives no interest in the land conveyed, and prepares deeds of trust and other kinds of lien instruments to which it is not a party, for which it makes no "separate charge" (stipulation 4) in the belief that such services will enhance the volume of its legitimate business of compiling abstracts and writing title insurance policies. In such circumstances we hold that the services performed under stipulation 3 fall within the definition contained in subsection (b), Section 2, Art. 430a, P.C., as having a sufficient "consideration, reward or pecuniary benefit, present or anticipated, direct, or indirect," etc. Somewhat analogous to our holding that there is a consideration for such services, are the principles announced in cases pertaining to "free" parking lots for automobiles, and "free" storage of the luggage of a regular guest of a hotel during his temporary absence. See McDonald v. Leonard Bros., Tex.Civ. App., 134 S.W.2d 460, writ denied, and Dallas Hotel Co. v. Richardson, Tex.Civ. App., 276 S.W. 765.

In Stewart Abstract Co. v. Judicial Commission of Jefferson County, Tex.Civ.App., 131 S.W.2d 686, the court had for consideration an appeal from an order overruling a plea of privilege, the sole question for determination appears to have been whether or not relators had introduced sufficient proof to establish, prima facie, a cause of action. That case, like the instant one, was to enjoin respondent from illegally practicing law. The right to such relief under proper conditions was recognized. The facts involved there were different in some respects to those before us, in that, in addition to the stipulated facts before us, respondents were shown to be rendering opinions on titles and furnishing them to customers. This to our minds is just another service which involves the practice of law under our statutes. The holding in that case is not decisive of the question before us, but we cite it mainly for the collation of authorities on the question of "illegal practice of law".

There are other reasons why we believe the defendant corporation is engaged in the illegal practice of law, in violation of the provisions of Section 2, Art. 430a, P.C.

Relating to the services defendant admits by stipulation 3 it is performing, we find by stipulation 6, it is said: "Defendant does not advise persons, firms and corporations as to their rights *except* (emphasis ours) as to the purpose and effect of the instruments drawn as set out in paragraph 3 (of stipulations) and in the manner set out in paragraph 5." By reference to stipulation 5 last above mentioned, we find that defendant has in its employment four licensed attorneys who supervise the preparation and execution of the instruments set out in stipulation 3, and who advise the interested parties as to the purpose and effect of the documents so drafted.

■ No one would contend that a corporation could not legally employ an attorney to represent it. It is equally true that a corporation can act only by some type of agent. In Presidio County v. Shock, 24 Tex.Civ.App. 622, 60 S.W. 287, 290, it was said: "It is well understood that the relation of attorney and client is a relation of agency, and in its general features, is governed by the same rules which apply to other agencies."

At the time of trial it was stipulated with reference to 8 above set out, that defendant did solicit patronage for compiling of abstracts and the issuance of title policies and, in connection with the latter, represented that it would prepare the documents set out in stipulation 3, but that such papers as were so prepared were at the instance of the persons for whom the services were performed, and in many instances such acts were done under and at the direction of the executive officers of the defendant and at a time when the persons who drew the instruments had never seen the customers and never saw them until the transaction was ready to close; that such were also the facts where a notary public prepared the instruments.

It is clear to us that there existed no contractual relation between defendant's employed attorneys and defendant's customers whose rights were affected by the instruments, which defendant stipulates that it agreed to draw. The services so performed by the attorneys were for their

116

principal who employed them. These attorneys in the performance of their services for defendant may not thus assist defendant to violate the illegal practice act.

■ We repeat, a corporation cannot practice law, nor can it circumvent the statutory inhibition by the subterfuge of employing competent lawyers to practice law for it. No just law will tolerate such an evasion. 2 R.C.L. 946, and cases cited in footnotes. State ex rel. McKittrick, Atty. Gen., v. C. S. Dudley & Co., 340 Mo. 852, 102 S.W.2d 895, by the Supreme Court of Missouri, quotes with approval the rule announced in 2 R.C.L., supra. The attorneys so employed by defendant are in its service and not amenable to those for whom the defendant in this case says it performs the service. In People v. People's Trust Co., 180 App.Div. 494, 167 N.Y.S. 767, 768, this significant language was used: "Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client."

Defendant in this case could not hold itself out to its customers as obligating itself to perform the services set out in stipulation 3, and evade the illegal practice law act, by employing a competent practicing attorney to perform those services for it. Crawford v. McConnell, 173 Okl. 520, 49 P.2d 551; Cain v. Merchants Nat. Bank & Trust Co., 66 N.D. 746, 268 N.W. 719; Depew v. Wichita Association, etc., 142 Kan. 403, 49 P.2d 1041. There are many cases from other jurisdictions to the same effect.

As we view the legislative intent as reflected by Article 430a, P.C., the defendant cannot perform the services prohibited by law and escape through the contention that its agents, servants and employees did the thing complained of, and thereby thwart the purpose of the statute. We believe that the president or any other acting officer of the corporation defendant, even though he be also a licensed attorney, could not do and perform the services contained in stipulation 3, as the acts of the corporation and thus evade the penalty of the statute. The same may be said of the four attorneys employed by and who act for defendant in such matters.

■ Further relative to what we have said, we find in Section 3 of Article 430a this language: "It shall be unlawful for any corporation to practice law as defined by this Act or to appear as an attorney for any person *other than itself* in any court in this State", etc. It is our opinion that the words, "other than itself", emphasized by us above, were used by the Legislature to make it plain that a corporation is not prevented from hiring a regular staff of lawyers to appear and represent it in court. This is not practicing law by the corporation because no construction should be placed upon the language which would render it void if it may be construed otherwise with reasonable certainty—a corporation is essentially different from a natural person, in that a natural person can appear and act for himself, but a corporation must always speak and act through its agent.

We may further notice just here that there is nothing in this record to indicate that as a prerequisite to the issuance of the title insurance policy by defendant, its attorneys or any other designated person should draw the documents mentioned in stipulation 3, so long as the one to whom the policy was to be issued had a satisfactory title to the land. It is argued at length by defendant in its brief, substantially, that it had the right to require its policyholders to sign and use the legal forms prepared by its attorneys, as we understand its contention, it issues the policy in reliance upon the fact that the conveyances have been prepared by its own attorneys. There is nothing in the record tending to show that it will not issue a policy to an owner having good title, regardless of who prepared the conveyances under whom he holds.

■ We are not unaware of the provisions of Section 2, Art. 430a, P.C., relating to notaries public drawing deeds and other documents. If the effect of the act is to permit notaries public to practice law to the extent provided, still there is nothing in the act permitting corporations to do so.

■ We therefore conclude that plaintiffs are entitled to the injunctive relief sought. The facts are fully stipulated in the record and no useful purpose would be served by remanding the cause for any purpose. It becomes our duty to render the kind of judgment that the trial court should have entered.

■ Those parts of the judgment overruling the pleas in abatement and granting injunctive relief only in the circumstances mentioned in the judgment will be left undisturbed and that part of the judgment denying full injunctive relief under other

conditions therein named will be reversed and here rendered, perpetually enjoining defendant from engaging in the matters and things complained of by plaintiff and more especially those things enumerated in stipulation 3 of the agreed facts in this case, which we construe to be a violation of the act prohibiting the illegal practice of law. Judgment left undisturbed in part and reversed and rendered in part.