23613, 23614.   GEORGIA BAR ASSOCIATION v. LAWYERS TITLE INSURANCE CORPORATION; and vice versa.

ARGUED JULY 12, 1966—DECIDED OCTOBER 6, 1966— REHEARING DENIED NOVEMBER 3, 1966.

658

*H. H. Perry, Jr., Ed G. Barham, Mallory C. Atkinson, Stephens Mitchell,* for appellant.

*Charles J. Bloch, Bloch, Hall, Groover & Hawkins, William G. Grant, Grant, Spears & Duckworth,* for appellees.

Cook, Justice. ■ In the enumeration of errors of the Georgia Bar Association it is contended with reference to the constitutionality of the legislative Acts defining the practice of law as follows: "It is the function and responsibility of the judiciary and not the legislature to define what constitutes the unauthorized practice of law. In these circumstances, the Acts of the General Assembly (Georgia Laws 1931, pages 191-194; Georgia Laws 1937, pages 753-754) defining the practice of law and particularly that part which authorized title companies to: 'prepare such papers as it thinks proper, or necessary, in connection with a title which it proposes to insure, in order, in its opinion, for it to be willing to insure such title, where no charge is made by it for such papers,' is unconstitutional as being in violation of Article V [VI?], § 1, Paragraph 1 of the Constitution (Code § 2-3601)."

Art. VI, Sec. I, Par. I of the Constitution (*Code Ann.* § 2-3601) provides: "The judicial powers of this State shall be vested in a Supreme Court, a Court of Appeals, Superior Courts, Courts of Ordinary, Justices of the Peace, Notaries Public who are ex-officio Justices of the Peace, and such other Courts as have been or may be established by law."

The appellants have cited numerous cases from other states dealing with the inherent powers of the judiciary to regulate the practice of law. We have read these cases with much interest, and we concur in the general view expressed in those cases that the judiciary can not be circumscribed or restricted in the performance of these duties.

Historically, in this state, the General Assembly has enacted legislation appropriate and essential in aiding the judiciary in the discharge of these duties, and this court has recognized the right of the General Assembly to enact these statutes. In *Ex Parte Hale,* 145 Ga. 350 (89 SE 216), it was said: "The question of eligibility for admission to the bar has been the subject-matter of legislation in this State for more than a century. In

sections 65 and 66 of the judiciary act approved December 23, 1789 (Watkins' Digest of Georgia Laws, 389), there were provisions on this subject, and earlier Acts with reference thereto were mentioned and repealed." As early as 1812 (Cobb, 578) legislation was enacted dealing with the disbarment of attorneys. In 1963 (Ga. L. 1963, pp. 70-72) the General Assembly passed an Act authorizing this court to establish the State Bar of Georgia, and on December 6, 1963, this court entered an order creating the State Bar of Georgia pursuant to that Act. Minutes of Supreme Court of Georgia, Vol. 34, p. 107 et seq.

The first statutory provision defining the practice of law in this state was enacted August 7, 1931 (Ga. L. 1931, pp. 191, 194). Counsel have cited us no case by this court, and we have found none, deciding the question of whether the General Assembly was exercising a judicial function in thus defining the practice of law. The following cases, dealing with the definition of the practice of law, were all by a divided court: *Atlanta Title &c. Co. v. Boykin*, 172 Ga. 437 (157 SE 455); *Boykin v. Hopkins*, 174 Ga. 511 (162 SE 796); *Sharp-Boylston Co. v. Haldane*, 182 Ga. 833 (187 SE 68); *Gazan v. Heery*, 183 Ga. 30 (187 SE 371, 106 ALR 498).

In view of the historical recognition by this court of the right of the legislative branch of government to enact legislation in aid of the judiciary in the performance of its functions, we hold that the statute under attack, defining the practice of law, is not a denial of the constitutional powers of the judicial branch of government, and the trial judge correctly so held.

■ The remaining assignments of error, on both the main appeal and the cross appeal, all relate to the question of whether the evidence showed any activities of Lawyers Title Insurance Corporation in violation of the Georgia statute defining the practice of law.

The entire evidence in the case was given by a retired officer and present officers or employees of Lawyers Title Insurance Corporation. It appeared from the evidence that the policy of Lawyers Title Insurance Corporation from its incorporation had been to co-operate with lawyers and encourage the employment of lawyers by persons desiring title insurance through the cor-

poration. Outside of the Atlanta area the corporation issues policies of title insurance only on certificates of title furnished by lawyers not in the regular employ of the corporation, who have either applied for title insurance for a client, or have been employed by the corporation to examine the title to property of a customer of the corporation seeking title insurance. In the Atlanta area the corporation maintains a title plant and can determine for itself, without the services of an independent lawyer, the risk involved in insuring a particular title. If a person in the Atlanta area does not wish to be represented by a lawyer, the corporation may determine the insurability of the title through its employees who are lawyers, and it is this type of business that is referred to as "walk-in business." The evidence showed that this business constituted a very small part of the business of the corporation. In these instances the corporation charges the customer the amount suggested by the Atlanta Bar Association as the minimum title fee to be charged by a lawyer in examining a title and having it insured.

The trial judge, the Honorable O. L. Long, held that the evidence adduced on the trial does not reveal any activities of the title corporation prohibited by the law of Georgia, or violative of the applicable statutes of the State of Georgia, except the so-called "walk-in" business and the advertisements encouraging it. His order declared the activities of the corporation violating Georgia statutes to be as follows:

"1. That the plaintiff, by and through its advertisements, is holding itself out to the public as being authorized to render legal services and advice in the handling and closing of real estate transactions between applicants for title insurance and third persons;

"2. Advertising that the employment of an attorney is not necessary, thus leading the public to believe that the plaintiff is engaged in the business of conveyancing; preparation of legal instruments; and the rendering of opinions as to the validity or invalidity of titles to real and personal property, in addition to insuring titles to real property.

"3. Advertising that the fees and charges for such services are the same as would be charged by an attorney, and in pur-

suance of such advertisements, where no attorney is employed, handling and closing such real estate transactions and arranging its charges for title insurance and for the examination of records of titles to real property in such manner as to effectively include a charge for rendering opinions as to the validity or invalidity of titles to real property and for the preparation of legal instruments in such transactions. This result, under the evidence, being accomplished by charging, in accordance with an alleged agreement with the Atlanta Bar Association, the same total fee, including the title insurance premium, as would have been charged under Atlanta Bar Association rates had an attorney been employed in the handling and closing of such transaction."

The order further declared: "With further reference to the so-called 'walk-in' business, and advertisements which encourage such business, the activities of the plaintiff, in order to comply with the statutes of Georgia, must be confined to:

"(a) Preparing such papers as it thinks proper, or necessary, in connection with a title which it proposes to insure in order for it to be willing to insure such title, making no charge for such papers as permitted by the last proviso in Code Sec. 9-401 of the Code of Georgia of 1933, and/or

"(b) Examining the record of titles to real property, preparing and issuing abstracts of title from such examination of records and certifying to the correctness of same, issuing policies of insurance on titles to real or personal property, employing an attorney or attorneys in and about their own immediate affairs or in any litigation to which it may be a party, as permitted by Code Sec. 9-403 of the Code of Georgia;

"(c) Construing the Act of 1931 (Code Secs. 9-401, et seq.) as a whole, even as to the so-called walk-in business, the plaintiff, being a title insurance company, may prepare such papers as it thinks proper or necessary in connection with a title which it proposes to insure if it makes no charge for such papers. (That part of the Act codified as Code Sec. 9-401). Under that same section, it may do any of the acts therein set out in a transaction to which it is a party. Under that part of the Act codified as Code Sec. 9-403, it may examine records, issue abstracts of title, certify to the correctness of them, and issue

policies of insurance on titles to real or personal property. Under this section its right to charge for the services therein permitted is not limited to charges or premiums on the policies it issues. There is nothing in this section which forbids plaintiff (petitioner) to make charges for the examination of the records and the preparing, issuing and certifying of titles, which this section authorizes and permits.

"The General Assembly having by this section (Code Sec. 9-403) authorized plaintiff to examine the records of titles to real property, to prepare and issue abstracts of title from such examination of the records and to certify to the correctness of the same, it necessarily follows that the General Assembly has authorized the plaintiff to receive payment for these services.

"As to advertisements which encourage such 'walk-in' business, any advertising matter used by the plaintiff which intimates to the public or leads the public to believe that members of the public may obtain legal services, or the services of lawyers in the employ of the plaintiff, by going directly to its place of business and which encourages such walk-in business is in violation of Code Section 9-402 of the Code of Georgia unless such advertisements are strictly confined to (a) or (b) or (c) above."

We think the trial judge correctly determined the issues of law and fact in the case, and the declaratory judgment entered in the trial court is not subject to the assignments of error made in the enumeration of errors of either the appellant or the cross appellant.

*Judgment affirmed on both the main appeal and the cross appeal. All the Justices concur, except Grice, J., who dissents on main appeal. Duckworth, C. J., concurs specially. Candler, P. J., disqualified.*

DUCKWORTH, Chief Justice, concurring specially. While I concur fully in the judgment, I believe I do so for a different reason, or, for the same reason stated differently. I believe the decisions of this court, including *McCutcheon v. Smith,* 199 Ga. 685 (35 SE2d 144); *Thompson v. Talmadge,* 201 Ga. 867 (41 SE2d 883); *Sirota v. Kay Homes, Inc.,* 208 Ga. 113 (65 SE2d 597); *Northside Manor, Inc. v. Vann,* 219 Ga. 298 (133 SE2d 32), have made it unmistakably clear that while the legislative

department alone can enact laws, the judicial department alone can define and construe those laws. This means that the judiciary alone can define what constitutes "practice of law." But the legislative department can fix terms and conditions upon which "practice of law" is permitted, and fix penalties for violations thereof. It means that the legislature can constitutionally authorize anyone to perform acts that clearly come within the judicial definition of practicing law without a license and without punishment.

Therefore, I believe the present case is soundly and comprehensively dealt with and decided when we hold, as we must, that despite the fact that the activities authorized by non-lawyers in the 1931 Act, as amended (Ga. L. 1931, pp. 191, 194; *Code Ch.* 9-4; 1937, pp. 753, 754), may come within the judicial definition of "practice of law,"—bearing in mind that one can charge for the use of his records, and can practice law in his own case even in courts—they can be lawfully engaged in, and courts have no right or power to prevent them or penalize them.

I do not agree with anything said or implied in the majority opinion to the effect that the legislative department can invade the constitutionally reserved exclusive jurisdiction of the judicial department to define, construe and fix the meaning of the practice of law either to aid or to hinder the courts in the free and full exercise of their exclusive jurisdiction. None of the legislation dealing with the learned profession of medicine can or does contradict what I have said. Of course, as pointed out above the legislature can constitutionally permit non-lawyers or non-doctors of medicine to engage in activities which courts hold to constitute the practice of law or medicine; but such permission in no degree affects or changes the definitions the courts give to those professions, which definitions are beyond the constitutional reach of the legislature. On the other hand, courts can not invade legislative jurisdiction to prevent what the legislature authorizes. Both departments of government must be kept within their own exclusive jurisdictions. In this case courts can not prevent what the legislature authorized by the 1931 law, as amended, supra, for to do so would be to violate the Constitution by invading the exclusive jurisdiction of that de-

partment. The legislature can constitutionally define what portion of the practice of law or medicine it will prohibit by those not qualifying as members of such professions as judicially defined, but it can likewise specify so much of such practice by non-members of the professions as it chooses to allow without penalty. That is precisely what we have in the law which is the basis of this complaint. For the courts to attempt to penalize or prevent what the legislature has authorized would be judicial invasion of legislative jurisdiction. Courts can enforce laws, lawfully enacted, and they must not violate them. Courts and lawyers must recognize that the practices authorized by non-lawyers by this law, supra, are not matters carried on before courts, hence are outside the court's authority to control and, hence, the court has no authority to control those acts not committed before them. I would affirm on both the appeal and the cross appeal.

GRICE, Justice, dissenting. The more I consider this matter the firmer is my belief that the petition here was subject to general demurrer. The statute relied upon (Ga. L. 1931, pp. 191, 194; Ga. L. 1937, pp. 753, 754; *Code Ann.* § 9-401) attempts to define the practice of law and, in my view, is therefore unconstitutional. The Constitution of this State declares that "The judicial powers of this State shall be vested in a Supreme Court, a Court of Appeals, Superior Courts . . . and such other Courts as have been or may be established by law." Art. VI, Sec. I, Par. I (*Code Ann.* § 2-3601). Thus, the power to make this definition is vested exclusively in the judicial branch of our State government.

The statute cannot be sustained upon the ground that it is an effort by the legislature to aid the courts to perform their function. Our Constitution provides that "The legislative, judicial and executive powers shall forever remain separate and distinct . . ." Art. I, Sec. I, Par. XXIII (*Code Ann.* § 2-123).

I believe that we should decide the constitutional issue made here. Since the main portion of the Act is void for the reason given above, its proviso as to permitting certain acts by title insurance companies cannot be upheld. I would reverse on the main appeal.