25034. WALLACE v. WALLACE.

Argued January 14, 1969—Decided February 6, 1969—Rehearing denied February 20, 1969.

*George G. Finch, Wesley R. Asinof,* for appellant.
*Charles J. Driebe, Albert Bailey Wallace,* for appellee.
*William C. Turpin, Jr., Joseph B. Cumming, Charles J. Bloch, Charles L. Gowen, Robert B. Troutman, Albert J. Henderson, Sr., F. M. Bird, Howell Hollis, Robert M. Heard, Maurice C. Thomas, H. H. Perry, Jr., Hugh M. Dorsey, Jr., Will Ed Smith, Henry P. Eve, Omer W. Franklin, Jr., David H. Gambrell, Frank C. Jones, Alexander Cocalis, Mallory C. Atkinson,* amicus curiae.

Grice, Justice. This review involves an election contest which, among other issues, draws into question the validity of the creation of the State Bar of Georgia. The contest, relating to the office of District Attorney for the Clayton Judicial Circuit, is, insofar as this appeal is concerned, between the appel-

lant Albert Edmund Wallace, Jr., and the appellee Albert Bailey Wallace. It arose following appellant's nomination for that office in the 1968 Democratic Primary and the declaration of his election to the same in the general election of November 5, 1968.

The appellee, a qualified write-in candidate and voter, on November 15, 1968, filed in the Superior Court of Clayton County his petition claiming that the appellant was ineligible to hold the office. He asserted, insofar as necessary to recite here, that the appellant did not meet the constitutional requirement of three years of law practice, since he was not a member in good standing of the State Bar of Georgia because he did not register with or pay any license fee to the State Bar of Georgia until June 1968, although he had been admitted to practice law in May 1963.

To this petition appellant filed an answer in which he denied the essential allegations and interposed several defenses. Those which are material here may be summarized as follows: (1) that he is eligible to hold the office under both the Constitution and the laws of Georgia; (2) that he had never been suspended from the practice of law, disbarred or disciplined, and that he had practiced law for more than three years next preceding his election; (3) that Rule 1-501 of the State Bar of Georgia, providing for payment of license fees on January 1 of each year, is not self-executing insofar as suspension is concerned, and provides neither for an "automatic" suspension nor that the member "shall stand suspended" for nonpayment of such license fee; and (4) that Georgia Laws 1963, page 70, and Rules of the State Bar of Georgia under which appellee claims appellant to be ineligible, are in violation of the State Constitution for several specified reasons which will be recited later.

The contest came on for hearing before a judge of an adjoining circuit without a jury. After hearing evidence, the essential portions of which are hereinafter referred to, he entered an order holding that appellant was ineligible to hold the office and that the constitutional issues were without merit. The order was superseded pending this appeal.

■ We deal first with Enumeration number 1, which challenges the holding that appellant was ineligible. This enumeration

asserts in substance that the trial court erred in holding that appellant, who was admitted to practice by a superior court on May 31, 1963, had practiced law continuously in the courts of Georgia since that date, had never been suspended or disbarred, and was elected to the office of solicitor general (now district attorney) on November 5, 1968, was ineligible to hold that office.

Appellant urges that since he has met the requirements recited in the Constitution and the statute, he is eligible for the office. He contends that the Constitution does not define the practice of law, but that the General Assembly considers that admission to the bar and license to practice in the superior courts is all that is required to constitute the practice of law under the constitutional provision, and that membership in the State Bar of Georgia or payment of dues thereto is not any part of the eligibility requirement.

We cannot agree.

Our State Constitution provides in material part that ". . . no person shall be hereafter elected solicitor general, unless at the time of his election he . . . shall have practiced law for three years next preceding his election." Art. VI, Sec. XIII, Par. I (*Code Ann.* § 2-4801). An Act of the General Assembly provides: "No person is eligible to the office of solicitor general . . . who has not been duly admitted and licensed to practice law in the superior courts for at least three years. . ." *Code* § 24-2901, amended by Ga. L. 1964, p. 362.

The statute's denial of eligibility to one "who has not been duly admitted and licensed to practice law in the superior courts for at least three years" (*Code Ann.* § 24-2901, supra), must be read in the light of the higher requirement of the Constitution, "shall have practiced law for three years" (Art. VI, Sec. XIII, Par. I, supra). The language "shall have practiced" means actual practice and, of course, contemplates lawful practice. No one would seriously argue that the Constitution intended to sanction or approve the unlawful practice of law.

Admittedly, appellant was engaged in the practice of law during the three years immediately preceding his election. But the question is whether it was lawful practice.

The undisputed evidence adduced upon the hearing shows that

although the appellant was admitted to the practice of law in May 1963 and the State Bar of Georgia was created in December 1963, he never registered with or paid any license fee to it until June 1968, "right before" he entered the race for solicitor general.

Rule 1-203 of the rules and regulations for the organization and government of the State Bar of Georgia (219 Ga. 878, 879), approved by this court on December 6, 1963, states that "No person shall practice law in this State unless he is an active member of the State Bar of Georgia in good standing. . ."

The appellant contends that since he has never been suspended for any reason he is a member in good standing of the State Bar. He points to Rule 1-204 (219 Ga. 878, 879) which provides that "No person shall be deemed a member in good standing: (a) While suspended for nonpayment of the license fee prescribed. . . (b) While suspended for disciplinary reasons . . ." and asserts that no affirmative action suspending him having been taken, he was authorized to practice law during the years 1964 through June 1968.

This contention is wholly without merit. What appellant overlooks is that he had never achieved the status of a member of the State Bar in good standing so as to require any suspension, affirmative or otherwise, to deprive him of it. Thus the question of suspension is not even relevant. A person cannot be suspended from a status he does not occupy and has never occupied.

We fully agree with the learned trial judge that "It is crystal clear that no person can legally practice law without first registering and paying the license fee required." Besides Rules 1-203 and 1-204, quoted in part above, it is apparent from paragraph 7 of the Order of this court creating the State Bar (219 Ga. 873, 876) that this result was intended.

The appellant's practice of law during the years 1964, 1965, 1966, 1967 and approximately one-half of 1968 having been unlawful, he does not meet the Constitutional eligibility requirement of having practiced law for three years next preceding his election, and the trial court's holding that he was ineligible for the office of district attorney was correct.

■ Enumeration of error number 2, asserting in essence that the trial court erred in construing Rule 1-204 of the State Bar of Georgia insofar as suspension of the appellant is concerned, is controlled adversely to him by the ruling in Division 1, supra, of this opinion.

■ This brings us to the enumeration complaining of the overruling of appellant's attacks on the constitutionality of Georgia Laws 1963, page 70, which authorized this court to create the State Bar of Georgia.

Before going into the issues some prior events should be noted.

The movement seeking the establishment of unified, or integrated as they also are called, state bar organizations began throughout the United States about 1920. From the reported cases and legal periodicals it is apparent that the efforts were fraught with controversy. The arguments for and against have been thorough, and need no reiteration here.

The nature of this type of organization has been well defined: "This means that all practicing attorneys in the State are required to be members of the State bar, that they are subject to the rules of the bar, including provisions for the payment of an annual fee to administer the purposes of the integrated bar, and that they are required to adhere to a code of ethics and are subject to disciplinary proceedings for infractions of the code. Whether created by or pursuant to statutes or by court rules, integrated bars have common characteristics of being organized by or under the direction of the State, and of being under its direct control; and in effect such bars are governmental bodies. . ." 7 AmJur2d 47, Attorneys at Law, § 7.

A number of purposes of such organizations have been stated. With varying emphasis they include such matters as improving the administration of justice, assisting in admission to the bar, handling disciplinary infractions, continuing legal education for the bar, prohibiting unauthorized practice of law, and improving public relations.

Some 30 states have now created unified or integrated bars. No state which has created one has later abandoned it.

Efforts to bring about a unified bar in Georgia began in the late 1920's and continued almost without interruption, as the legal publications show.

In 1963 the General Assembly passed an Act (Ga. L. 1963, p. 70) which recites that ". . . the Supreme Court of this State shall be authorized, upon a petition presented by the Georgia Bar Association, to establish, as an administrative arm of the court, a unified self-governing bar association to be known as the 'State Bar of Georgia' composed of all persons now or hereafter licensed to practice law in this State." This Act recited that it gave the Supreme Court authority, upon recommendation of the Georgia Bar Association, to adopt rules and regulations for the organization of a unified bar and to define the rights, duties and obligations of members, including payment of a reasonable license fee, and to otherwise regulate and govern the practice of law in this State.

On August 31, 1963, an application by the Georgia Bar Association for the establishment of a unified state bar was made. Certain lawyers filed objections, which included several of the attacks made here. On October 21, 1963, a public hearing was held at which lawyers appeared personally in support of and in opposition to its establishment.

On December 6, 1963, this court, without written opinion, entered an order, portions of which are as follows:

"In the Supreme Court of Georgia

"In Re: . . .

## "ORDER

"Upon consideration of the application filed in this Court on behalf of the Georgia Bar Association . . . it is ORDERED:

"1.

"That the proposed rules and regulations for the organization and government of the State Bar of Georgia submitted to this Court on August 31, 1963, pursuant to order of this Court, and thereafter amended following hearing on October 21, 1963, and resubmitted to this Court, be and the same are hereby approved.

"2.

"That pursuant to . . . (Ga. Laws 1963, p. 70), the State Bar of Georgia is hereby created and established.

"3.

". . . [other paragraphs]

"So Ordered, this 6th day of December, 1963. . ."

Then appear the signatures of the seven members who then constituted this court, followed by their titles.

This order is inscribed on the Minutes of the Supreme Court at Volume 34, page 107, and is reported at 219 Ga. 873.

The foregoing order was necessarily a determination that the action then taken was not, for any reason, considered contrary to the laws and Constitution of this State or the Constitution of the United States, in keeping with the oaths of office taken by those then serving. This order is persuasive here.

The constitutional attacks which appellant makes, insofar as necessary to recite, may be summarized as follows:

(1) That the legislative Act (Ga. L. 1963, p. 70), authorizing this court to create a unified state bar, is unconstitutional in that it attempts to delegate legislative power to the Supreme Court and the Georgia Bar Association, contrary to Article I, Section I, Paragraph XXIII of the State Constitution;

(2) That said Act is unconstitutional in that it attempts to delegate to the Supreme Court and the Georgia Bar Association jurisdiction to legislate into existence the State Bar of Georgia, in violation of Article VI, Section II, Paragraph IV of the State Constitution;

(3) That said Act is unconstitutional in that it is a special law relating to a subject for which provision has been made by a general law, in violation of Article I, Section IV, Paragraph I of the State Constitution;

(4) That said Act is unconstitutional in that it deprives appellant and others of full enjoyment of their rights, privileges and immunities as lawyers, in violation of Article I, Section I, Paragraph XXV of the State Constitution;

(5) That said Act is unconstitutional in that it deprives appellant of the right to have his rights, duties and obligations defined by the General Assembly, in violation of Article III, Section I, Paragraph I of the State Constitution;

(6) That said Act is unconstitutional in that it deprives appellant of determination by the General Assembly of matters properly the subject of legislation defining his rights, duties, and obligations as a lawyer, in violation of Article III, Section VII, Paragraph XX of the State Constitution; and

(7) That said Act and the Rules of this court for the organization of the State Bar (219 Ga. 878 et seq.) are unconstitutional in that the General Assembly purported to delegate to this court the power to create a private corporation and that this court purported to do so, in violation of Article III, Section VII, Paragraph XVII of the State Constitution.

These constitutional attacks upon the creation of the State Bar of Georgia are similar to many which have been made upon the various unified bar organizations throughout the United States. However, the courts have consistently upheld such organizations.

(a) The substantial question made by these attacks, as we view them, is whether the authority given the Supreme Court to create the State Bar of Georgia was legislative power.

Without doubt, the answer is no.

First of all, the very essence and basis of a unified bar is the regulation of the practice of law, which historically has been a judicial, not a legislative, function. And our State Constitution declares that "The judicial powers of this state shall be vested in a supreme court . . . [and other courts]." Art. VI, Sec. I, Par. I (*Code Ann.* § 2-3601).

In most, if not all, of the jurisdictions of this country, it is recognized that "The practice of law is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate the practice naturally and logically belongs to the judicial department of the state government. Indeed, it has been said that the courts have an inherent power to regulate the conduct of attorneys as officers of the court and to control and supervise the practice of law generally, whether in or out of court. While it is in the prerogative of the judicial department to regulate the practice of law, the legislature, under the police power, may act to protect the public interest, but in so doing, it acts in aid of the judiciary and does not supersede or detract from the power of the courts." 7 AmJur2d 44, Attorneys at Law, § 2.

The question of a court's inherent power to supervise regulation of the practice of law by creating a unified state bar has been discussed at length by the highest courts of a number of

the states, and each of them has held that it had such power. Among those decisions are: Commonwealth ex rel. Ward v. Harrington, 266 Ky. 41 (98 SW2d 53); In re Sparks, 267 Ky. 93 (101 SW2d 194); In re Mundy, 202 La. 41 (11 S2d 398); Integration of Bar Case, 244 Wis. 8 (11 NW2d 604); State Bar of Michigan v. City of Lansing, 361 Mich. 185 (105 NW2d 131); In re Integration of Nebraska State Bar Association, 133 Neb. 283 (275 NW 265, 114 ALR 151); In re Integration of State Bar of Oklahoma, 185 Okla. 505 (95 P2d 113); Petition for Integration of Bar of Minnesota, 216 Minn. 195 (12 NW2d 515); Petition of Florida State Bar Association, (Fla.) 40 S2d 902; In re Unification of Montana Bar Association, 107 Mont. 559 (87 P2d 172); Application of Montana Bar Association for Unification and Integration of the Bar, 140 Mont. 101 (368 P2d 158); In the Matter of Integration of the Bar of the State of Hawaii (Ha.) 432 P2d 887. See also, Lathrop v. Donohoe, 367 U. S. 820 (81 SC 1826, 6 LE2d 1191); In the Matter of Disbarment of Paul E. Rhodes, 370 F2d 411 (8th Cir.) (cert. den. 386 U. S. 999).

Various courts, in recognizing this inherent power to create unified state bar organizations, have defined or explained the nature and extent of inherent power as follows:

"The power to regulate the conduct and qualifications of its officers does not depend upon constitutional or statutory grounds. It is a power which is inherent in this court as a court—appropriate, indeed necessary, to the proper administration of justice. . . ." In re Sparks, 267 Ky. 93, supra.

"Inherent power arises from the fact of the court's creation or from the fact that it is a court. It is essential to its being and dignity and does not require an express grant to confer it. Under our form of government it is the right that each department of government has to execute the powers falling naturally within its orbit when not expressly placed or limited by the existence of a similar power in one of the other departments." Petition of Florida State Bar Association, (Fla.) 40 S2d 902, supra.

"The term 'inherent power of the judiciary' means that which is essential to the existence, dignity, and functions of the court from the very fact that it is a court." In re Integration of Nebraska State Bar Association, 133 Neb. 283, supra.

Also, this court has long recognized the inherent power of the judiciary. "That the courts possess certain inherent powers is a proposition which, so far as we know, has never been questioned. *Chapman v. Gray,* 8 Ga. 337; *Bradley v. State,* 111 Ga. 168 (36 SE 630, 50 LRA 691, 78 ASR 157); *Devereux v. Atlanta Railway & Power Co.,* 111 Ga. 855 (36 SE 939); *Central of Georgia R. Co. v. Alford,* 154 Ga. 863 (115 SE 771). This means, then, when the Constitution declares that the legislative, judicial and executive powers shall forever remain separate and distinct (art. 1, sec. 1, par. 23), it thereby invests those officials charged with the duty of administering justice according to law with all necessary authority to efficiently and completely discharge those duties the performance of which is by the Constitution committed to the judiciary, and to maintain the dignity and independence of the courts." *Lovett v. Sandersville R. Co.,* 199 Ga. 238, 239 (33 SE2d 905).

The argument is made that this court had no power, inherent or otherwise, to organize the State Bar since it is limited by Article VI, Section II, Paragraph IV of the State Constitution (*Code Ann.* § 2-3704) to appellate jurisdiction for the correction of errors of law, and the proceeding for organization of the State Bar was an original one.

This argument confuses power and jurisdiction. Jurisdiction refers to the types of cases the court can hear and decide. Power includes the authority to perform any function reasonably necessary to effectuate its jurisdiction, improve the administration of justice, and protect the judiciary as an independent department of the government. See *DeKrasner v. Boykin,* 54 Ga. App. 29, 34-36 (186 SE 701), for an excellent discussion of this distinction and numerous citations.

Nor does the fact that the legislature has in the past enacted statutes concerning the practice of law indicate that such is a legislative function. This court's recognition of such legislative enactments as Georgia Laws 1945, page 155 (*Code Ann.* § 81-1601 et seq.), creating the Judicial Council, and *Code* § 9-105 (as amended by Ga. L. 1952, page 262), relating to appointment of the Board of Bar Examiners, does not mean that this court intended to, or even could relinquish this judicial

responsibility to the legislature. On the contrary, this court has stated that the judiciary cannot be circumscribed or restricted in the performance of its power and duty to regulate the practice of law and has made it plain that it considers such legislation to be "in aid of the judiciary in the performance of its functions." *Ga. Bar Assoc. v. Lawyers Title Ins. Corp.*, 222 Ga. 657, 659 (151 SE2d 718) (one Justice specially concurring, one dissenting—but both recognizing the power of the court to regulate the practice of law).

Furthermore, the General Assembly apparently recognized that the creation of a unified state bar was properly a judicial function for the highest court in our judicial department. The Act manifests that body's approval, in the public interest, of the creation of a unified state bar, but leaves the creation, organization and government of it to this court.

Creation of a unified state bar being a judicial function, the legislature was not, in Georgia Laws 1963, page 70, attempting to delegate legislative power to the Supreme Court and the Georgia Bar Association, or attempting to delegate to the court and the Bar Association jurisdiction to legislate the State Bar into existence.

This holding also controls adversely to appellant as to his attacks asserting that the Act deprives him and others of full enjoyment of their rights, privileges and immunities as lawyers and deprives him of the right to have his rights, duties and obligations defined by the General Assembly. As discussed above, regulation of the practice of law is the function of the judiciary.

(b) The contention that Georgia Laws 1963, page 70, is a special law on a subject for which provision has been made by a general law is without merit.

The Act clearly is a general law. See *Cooper v. Rollins*, 152 Ga. 588, 592 (110 SE 726, 20 ALR 1105); *Talley v. Sun Finance Co.*, 223 Ga. 419 (2) (156 SE2d 55).

Furthermore, the portion of *Code* § 24-3901 relied upon by the appellant, subsection 1, deals with the jurisdiction of this court, not its power, as discussed in Division 3 (a), supra.

(c) The last constitutional attack asserts that the Act and the Rules of this court for the organization and government of

the State Bar, violate Article III, Section VII, Paragraph XVII of the State Constitution (*Code Ann.* § 2-1917), in that the General Assembly purported to delegate to this court the power to create a private corporation and this court purported to do so.

This contention is without merit.

The State Bar of Georgia is not a private corporation. No language appears in the order of this court that indicates any intent to create a private corporation. On the contrary, what was created is an administrative arm of the court. It is a governmental body. 7-AmJur2d 47, Attorneys at Law, § 7, supra.

Since the creation by this court of the State Bar of Georgia was the valid exercise of a judicial function, the attacks here made are not meritorious.

For the foregoing reasons, the judgment of the trial court is

*Affirmed. All the Justices concur, except Nichols and Frankum, JJ., who dissent. Duckworth, C. J., not participating, absent due to illness.*

NICHOLS, Justice, dissenting. I dissent from Divisions 1 and 2 of the majority opinion, as well as the judgment of affirmance.

Assuming, but not deciding that the creation of the State Bar of Georgia can withstand every attack made upon its constitutionality in this case, yet, at the time of the creation of the State Bar of Georgia all attorneys, duly licensed to practice law in this State, continued to be duly licensed until such time as they might have been suspended, disbarred, or otherwise had their licenses revoked.

Rule 1-501 provides: "License Fees—Each member of the State Bar of Georgia shall pay to the State Bar of Georgia a license fee which shall be due on January 1 of each year and upon his failure to do so, such member shall be given notice by mail by January 15 that his license fee has not been received and, if he fails to pay the same by March 1, he shall be suspended until all such license fees for the current and prior years shall have been paid, whereupon he shall automatically be reinstated." 219 Ga. 882.

The only logical interpretation of such rule is that some affirmative action must be taken before any suspension can result. Admittedly the appellant was duly licensed to practice

law in this State at the time of the creation of the State Bar of Georgia, and the State Bar of Georgia, through its proper officers, having failed to take any affirmative action to suspend the appellant, it cannot be said that the practice of law by him for the three years next preceding his election as solicitor general (district attorney) was illegal.

I am authorized to state that Justice Frankum concurs in this dissent.