**Frances DIXON, Plaintiff,**

v.

**GEORGIA INDIGENT LEGAL SERVICES, INC., et al., Defendants.**

**No. CV474-288.**

United States District Court,
S. D. Georgia,
Savannah Division.

Dec. 23, 1974.

Opinion on Motion for Reconsideration
Jan. 7, 1975.

Joseph B. Bergen, Savannah, Ga., for plaintiff.

Frank W. Seiler, Bouhan, Williams & Levy, Savannah, Ga., Austin E. Catts, Nightingale, Liles & Dennard, Brunswick, Ga., for defendants.

## ORDER ON PLAINTIFF'S MOTION TO REMAND

LAWRENCE, Chief Judge.

This case was originally brought in the Superior Court of Chatham County. It was removed to this Court under 28 U.S.C. § 1442(a)(1). The defendants are two legal services corporations, Georgia Indigent Legal Services, Inc. (GILS) and Georgia Legal Services Program, Inc. (GLSP), and two individuals. The latter who are attorneys are referred to as "representatives" of the legal services corporations and are alleged to be engaged in the illegal practice of law in Chatham County as agents of GILS and GLSP. Plaintiff seeks injunctive relief.

The provenance of this litigation is an action in trover brought by attorneys employed by the defendant corporations in the Municipal Court of Savannah against Frances Dixon, who is plaintiff in the case. She alleges that the suit in the Municipal Court was filed and is being prosecuted by Messrs. Gottlieb and Remar in violation of Georgia law which prohibits the practice of the profession by corporations. Mrs. Dixon contends that in representing clients in the courts of this State and in maintaining a legal department and rendering legal services, defendants are violating the Georgia statutes governing the unauthorized practice of law.[1]

---

1. "It shall be unlawful for any person other than a duly licensed attorney at law to practice or appear as an attorney at law . . . . . It shall also be unlawful for any corporation,

Plaintiff seeks to enjoin defendants from proceeding further with the conduct of the trover action in the Municipal Court. She also prays for a rule nisi directing them to show cause why they should not be enjoined from engaging in the practice of law. A restraining order was issued by the Superior Court as to further prosecution of the trover suit in the Municipal Court.

Defendants removed the case to this Court under 28 U.S.C. § 1442(a)(1).[2] They contend that in performing the challenged acts the individual defendants (both are attorneys) acted under officers of the United States, namely, the Director of the Office of Economic Opportunity and the Secretary of Health, Education, and Welfare.

Plaintiff moves to remand on the grounds: (a) that the State Court proceeding is not against an officer of the United States or any agency thereof, or person acting under him, for any act under color of such office; (b) federal courts are without jurisdiction to regulate the practice of law in the courts of Georgia which possess inherent and statutory power to govern the subject in the courts of this State.

An extensive evidentiary hearing was held on December 13th and 16th in connection with the motion to remand. Testimony was heard from six witnesses, including the Director of the Southeast Regional Legal Services (OEO); the present Executive Director of GILS and GLSP; his predecessor in that office; the managing attorney of the regional office at Savannah; the President and immediate past President of the Savannah Bar Association.

A proper understanding of the setting of the present controversy and particularly of the legal question as to removability of the State Court suit to this jurisdiction requires a somewhat extended review of the historical background of legal aid in Georgia and of the evidence before this Court connected with the motion to remand.

### Background of Legal Aid in Georgia

The first Legal Aid Society in Georgia was established in 1924 at Atlanta. Under it, volunteer attorneys furnished gratuitous services to the poor. Similar local offices were later established by several local Bar Associations (Savannah, 1946;[3] Macon, 1955; Columbus 1957).

voluntary association, or company to do or perform any of the acts above recited." Ga. Code Ann. 9–402.

2. "(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . . ."

3. In 1966 a Special Committee of the Savannah Bar Association was appointed in connection with the Legal Aid Program in that City and as to a proposed contract between the local Society and OEO as to funding of the program. The Committee Report stated:
"Until 1946 there was no organized legal aid in Savannah . . . . .
"The deeper awareness of the organized bar of its duty to the poor was manifested that year when, largely through the efforts and devoted public service of H. Sol Clark, the Legal Aid Office of Savannah, Inc. was organized as an non-profit corporation for the purpose of rendering service to indigents in all cases except adoptions, bankruptcy, divorces, guardianships, contingent fee cases in case of personal injury and criminal cases.
"Two years after the establishment of this service a downtown office was established with a receptionist in order to qualify for funds from the United Community Services. Since 1948 UCS has provided funds for the salary of the Director (presently $3180) and for telephone, stationery and miscellaneous expenses . . . . .
"Legal aid services are rendered on a voluntary basis by members of the Bar in Chatham County. They accept cases, in rotation, from applicants meeting the qualifications of the Society. At the present time 75 attorneys serve as volunteers out of approximately 210 lawyers engaged in the active practice in Savannah. The average case load of the Legal Aid Society is around 600 cases per year of which only about 15% require the services of an attorney."
In 1967 OEO funding of the operations of the Savannah Legal Aid Society commenced.

For years the organized Bar of Georgia was interested in establishing a State-wide and funded Legal Aid system. However, adequate funds were lacking. In 1967 Federal funds for legal assistance to the poor became available through OEO. Several local Legal Aid offices took advantage of federal funding and qualified for same.

### GILS

In 1970 the State Bar of Georgia became aware that Federal funds (through the Department of Health, Education, and Welfare) were available on a matching, three-to-one basis to fund a State-wide program for legal assistance for indigents in *civil* cases. Pursuant to resolution of the Board of Governors of the State Bar, Georgia Indigents Legal Services, Inc., a non-profit charitable corporation, was chartered in Bibb County under HEW guidelines. GILS qualified for federal funding. The present allocations to it are $250,000.00 of State funds and $750,000.00 of HEW funds. Its Directors are comprised of the Board of Governors of the State Bar, certain ex-officio members and five members-at-large.

Through the applicable State agency (now Department of Human Resources), HEW contracted with GILS to provide legal services in accordance with federal guidelines and regulations. GILS also entered into an agreement under which VISTA volunteers assist the regional offices in the capacity of paralegal assistants, clerical workers, librarians and investigators. These workers receive compensation directly from the federal Government.

Budget approval is required.[4] The Executive Director of the State legal assistance corporation must submit a monthly financial report. A similar report as to the number of clients served is required. The Executive Director must approve the hiring of all employees. Remodeling of offices requires HEW approval. Telephone call logs must be kept reflecting the number of calls and the date and purpose thereof.

As a recipient of Federal funds, GILS is subject to various HEW regulations and requirements. Since they are of the same pattern as OEO guidelines governing the operations of GLSP, they will be covered under that heading.

### GLSP

In 1971 the Younger Lawyers Section of the State Bar learned that OEO funds were available for legal services to indigents. However, the guidelines prohibited the funding of such a program through GILS as that program was then structured. For that reason, Georgia Legal Services Program, Inc., a non-profit, charitable corporation, was chartered in 1971 in Fulton County in accordance with OEO regulations. GLSP receives an annual federal grant of $500,000. The Board of Directors consists primarily of lawyers from areas receiving funds and five at-large directors.

Expenditure of GLSP funds is subject to the following OEO controls and regulations:

1. Its annual budget[5] must be approved by the Regional Office.

2. Every three months the program must submit a "Grantee Quarterly Financial Report" (OEO Form 315) reporting the expenditure of federal funds. The annual audit must be made by a federally-approved firm of auditors.

3. All salaries exceeding $15,000 per year and any increase in an employee's

4. The GILS budget for the Savannah regional office for the year ending June 30, 1974, totalled $44,633 of which $40,967 was allocated to Salaried Personnel.

5. The GLSP budget for the Savannah office in the year ending June 30, 1974, amounted to $86,620 of which $46,252 was allocated for Salaried Personnel and $39,807 for space and rental cost, travel, supplies and equipment rental. The total budget of the Savannah office (GILS and GLSP) was $131,253.

salary exceeding 20% per annum must be approved by OEO.

4. A property inventory is required from each Regional Office. In any purchase of an item over $100 two oral bids are necessary. Purchases of items over $500 necessitate a written estimate and a federal form and approval in writing of the Regional Office. Title to all property purchased with federal funds is vested in OEO.

5. The program's personnel policies regarding vacation time, employee disputes and organizational structure require OEO approval.

6. The location of program offices, size of the staff, and office hours are subject to OEO approval.

7. All programs are subject to annual evaluations by a federally-funded evaluation team. It reviews the operation of the program and reports its findings, conclusions and recommendations to OEO. Based on such evaluations, the decisions as to additional federal funds and changes in the structure or operation of the program under review are made by OEO.

8. In the event of termination of federal assistance, the Regional Office arranges for the disposition of the personal property and the representation of clients and disposition of pending cases.

The two programs are operated together out of a central office in Atlanta.[6] They are managed by the same Executive Director. There are nine regional offices, each of which is managed by a managing attorney. The regional office at Savannah is composed of one managing attorney, seven staff attorneys, three secretaries, and two administrative workers.

It is the responsibility of the Executive Director at the central office in Atlanta to assure that the two corporations and programs are operated in accordance with applicable HEW and OEO guidelines and regulations. He makes the final decision concerning hiring and firing of staff attorneys. All salaries are paid out of Federal funds from the Atlanta office. The Executive Director who is answerable to the Director, Southeast Regional Legal Services (OEO), is required to file numerous reports and financial forms with such Regional Director under applicable federal regulations. These reports cover the operation and activities of the Savannah regional office.

OEO and HEW guidelines are periodically forwarded to the Executive Director of the Georgia Legal Services Programs. It is his responsibility to communicate same to the regional offices and staff attorneys. Many of the OEO and HEW guidelines are restated in an office manual which is furnished to each regional office for use by staff attorneys.

Both programs must make a detailed day-by-day accounting of expenditures to the Federal government. Periodic surveys are made by an independent evaluation team selected by OEO. It visits each regional office and conducts interviews with clients, judges, bar leaders and community service organizations concerning the manner in which the federally funded programs are operating. The result of such evaluation could limit or even terminate the funding of a regional office.

During the evidentiary hearing on the motion to remand plaintiff sought

---

6. The Articles of Incorporation of GILS provide that the corporation is organized "to provide a comprehensive program of legal services by lawyers to welfare applicants and recipients . . . ." In addition, the purposes of the corporation include the administering of legal service programs established by HEW in conjunction with its social and rehabilitation services assistance programs. The charter of GLSP does not limit that corporation to furnishing assistance to welfare recipients. It is empowered to provide "a comprehensive program of legal services . . . to needy individuals . . . ." In practice, the operations of GILS and GLSP blend with each other and become indistinguishable. Actually, they constitute a single program funded from two different federal sources with partial State support in the instance of GILS.

to establish the fact that the Boards of Directors of GILS and GLSP control the operation of the regional offices. Within the scope of their powers, the Boards do have a say about the operation of the programs. But extensive federal veto powers exist. To begin with, HEW and OEO must approve both the charter and the composition of the Board of Directors; even the time and place of meetings. Amendments to the by-laws of GILS or GLSP require federal approval. There is always the damoclean threat that if the programs are not operated in accordance with what HEW or OEO requires, federal funding of the programs may be cut off.

I am not impressed with plaintiff's argument that the State furnishes the funds to GILS through the Georgia Department of Human Resources. The $750,000 of federal matching funds do pass through the Department of Human Resources but the latter is merely a funnel. The grant does not lose its essential character as federal money by reason of temporary receipt and the disbursement thereof by the State Agency to GILS.[7]

The Economic Opportunity Act provides for financing "Legal Services" programs in order to further the cause of justice among persons living in poverty by furnishing legal representation and counselling in a way that assures maintenance of "a lawyer-client relationship consistent with the best standards of the legal profession". 42 U.S.C. § 2809(a)(3). It is a common saying that federal funding means federal control. "Whose bread I eat, his song I sing," goes the adage. To ignore the existence of federal control over the use and users of the federal funds channelled to GILS and GLSP is to avert your gaze when reality stares you in the face.

It is true that the Ichord Amendment to the Economic Opportunity Act provides that state and local bar associations shall be consulted by the Director and given an opportunity to comment on and make recommendations as to the proposed project before it is funded.[8] However, that provision was not intended "to give the local bar associations any form of veto over proposed programs". Troutman v. Shriver, 417 F.2d 171, 175 (5th Cir.).

Do attorneys employed by organizations conducting federally-funded legal assistance programs for the indigent act under officers of the United States within the meaning of the removal statute? To ask the question is to have it immediately answered if this Court follows Gurda Farms, Inc. et al. v. Monroe County Legal Assistance Corp. et al., 358 F.Supp. 841 (S.D., N.Y.). It is a nearly perfect fit of a precedent. The legal service program involved in *Gurda Farms* provided OEO-funded legal services to indigent farm workers. The action for damages brought by certain employers of such labor was removed from a New York court under 28 U.S.C. § 1442(a)(1).

Judge Bauman's decision on the motion to remand dealt in some detail with federal control over the program. He reviewed the various OEO regulations, guidelines and requirements referred to above. "The iron fist in the velvet glove" is the way he described the OEO control represented by periodic evaluations of programs which can result in re-

7. Plaintiff similarly emphasizes the fact that salaries of officials and employees of the central and regional offices are paid by checks on which is printed "GILS/GLSP". They are drawn against funds in bank accounts having their source in federal appropriations and grants.

8. "The Director shall make arrangements under which the State bar association and the principal local bar associations in the com-

munity to be served by any proposed project authorized by this paragraph shall be consulted and afforded an adequate opportunity to submit, to the Director, comments and recommendations on the proposed project before such project is approved or funded, and to submit, to the Director, comments and recommendations on the operations of such project, if approved and funded." 42 U.S.C. § 2809(a)(3).

ducing or entirely withholding funding as well as changes in personnel and restructuring of the Board of Directors or fundamental program policy changes.[9]

The Court found that "the activities of MCLAC [Monroe County Legal Assistance Corporation], like all legal services programs, are carefully monitored by O.E.O., and that the independence of its lawyers is severely circumscribed." It concluded that the attorneys employed in the Program were persons acting under federal officers and that the action was subject to removal under 28 U.S.C. § 1442(a)(1).

In *Gurda Farms* the district court cited among the decisions that illustrated "the broad sweep of the 'persons acting under' clause" the cases of Oregon v. Cameron, 290 F.Supp. 36 (D., Or.); Kuenstler v. Occidental Life Insurance Company, 292 F.Supp. 532 (C.D., Cal.), and Allen v. Allen, 291 F.Supp. 312 (S. D., Iowa). Oregon v. Cameron involved suits for trespass against VISTA volunteers. *Kuenstler* was an action against a private insurance company contracting with the federal government to administer the benefit provisions of the Social Security Act providing Health Insurance for the aged. Allen v. Allen was a garnishment action against a doctor who treated patients under Medicare and in doing so acted under the direction of the Secretary of Health, Education and Welfare. In each of these cases the removal of the action, pursuant to § 1442(a)(1), was upheld.

As earlier noted, the Economic Opportunity Act recognizes the need of "Legal Services" programs for the benefit of persons living in poverty. 42 U.S.C. § 2809(a)(3). In *Gurda* (358 F.Supp. p. 847) the district court pointed out that the Legal Services Project involved is "the product of a specific congressional authorization of legal assistance to migrant farm workers". See 42 U.S.C. § 2862(b)(1). HEW Regulations provide for legal services to families desiring help of lawyers with their legal problems. 45 CFR §§ 220.51(c)(4); 222.59.

The result of granting the principal relief that plaintiff seeks in this case would be to cripple or even destroy the federally-supported legal assistance program at Savannah as presently structured. To that extent the issuance of a permanent injunction could thwart the aim and purpose of Congress in providing federal funding for legal assistance to the poor. This observation is aside from the merits of the claim as to unlawful practice of law by the defendants. We are dealing at this point solely with the matter of removability. I mention Congressional objectives in relation to its bearing on federal involvment and interest in the legal assistance programs.

The availability of a federal forum for protection of officers of the United States of persons acting under them "should not be frustrated by a narrow, grudging interpretation of § 1442(a) (1)." Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396. While the removal act should be liberally construed to effect its purpose of maintaining the supremacy of the federal law, it should be interpreted, however, with "the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution". Oklahoma v. Willingham, 143 F.Supp. 445, 448 (E.D., Okl.). The regulation of the practice of law in State courts is primarily a matter for the states. It is within their legislative and judicial province.

The attorneys employed in the GILS-GLSP program of the Savannah Regional Office have acted under officers and an agency of the United States. While this Court is not bound by the holding in *Gurda Farms*, the decision of Judge Bauman, involving nearly identical facts, is buttressed by ample

9. An illustration of bureaucratic abuse of power is found in Monmouth Legal Services Organization v. Carlucci, 330 F.Supp. 985 (D., N.J.). Arbitrary action is tempered by the Economic Opportunity Act, 42 U.S.C. § 2944(2, 3).

authority and, in my opinion, reaches the proper result. Even if the New York precedent did not exist, this Court, under the facts before it, would have been drawn inevitably and irremeably to the same conclusion with respect to removability to the State action. The motion to remand is denied.

Removability establishes federal jurisdiction and existence of jurisdiction requires determination of whether the federally-funded corporate defendants and their staff attorneys are engaged in the unauthorized practice of law in Georgia by furnishing legal services to indigent persons.[10] The best course to pursue is to assign the matter for early argument.

## SECOND ORDER

### *OPINION ON MOTION FOR RECONSIDERATION AND FINAL JUDGMENT*

This case was removed from the Superior Court of Chatham County pursuant to 28 U.S.C. § 1442(a)(1). That section provides a federal forum in civil and criminal actions brought in state courts against "Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office".

Plaintiff filed a motion to remand, contending that the legal assistance activities and operations of the defendants sought to be enjoined are not under

any officer of the United States and that no such official or person acting under him is a party to the action removed to this Court. On December 23, 1974, following five hours of testimony relative to the jurisdictional aspect, I denied the motion to remand.

Plaintiff moved for reconsideration of that ruling. I permitted reargument on January 3rd. It turned out to be a mere reiteration of what plaintiff's counsel previously contended and argued. He has cited no decisions which derogate from federal jurisdiction in this litigation. On the other hand, indistinguishable authority in support of the removability of the action exists in Gurda Farms, Inc. v. Monroe County Legal Assistance Corporation, 358 F.Supp. 841 (S.D., N.Y.). See also Oregon v. Cameron, 290 F.Supp. 36 (D., Or.); Kuenstler v. Occidental Life Insurance Company, 292 F.Supp. 532 (C.D.Cal.); Allen v. Allen, 291 F.Supp. 312 (S.D., Iowa).

My Order of December 23rd denying the motion to remand was entered after two days of testimony covering in great detail the operations and policies of Georgia Indigents Legal Services, Inc. (GILS)[1] and Georgia Legal Services Program, Inc. (GLSP).[2] My prior denial of a remand and the retention by this Court of jurisdiction will stand.

At the hearing of the motion to reconsider that ruling counsel for plaintiff announced his intention to appeal

---

10. This is not to decide the matter of whether a private citizen possesses proper standing to raise that issue. The Georgia statute apparently limits the right to enjoin the unauthorized practice of law to the organized bar or Judicial Council. Ga.Code Ann. § 9–407. See the decision of Judge Osgood O. Williams of the Superior Court of Fulton County in Wehunt vs. Mary Lou Brown and Atlanta Legal Society, Inc., No. B–94519, May 23, 1974.

1. Georgia Indigents Legal Services, Inc. is a perpetual, nonprofit corporation, created under Georgia law in 1970. The Articles of Incorporation state:
   "The corporation is organized as a nonprofit corporation to provide a comprehensive program of legal services by lawyers to welfare

applicants and recipients in administrative fair hearing proceedings and related judicial proceedings; further, to administer and effectuate such legal services programs of the Department of Health, Education and Welfare or the Georgia State Department of Family and Children Services or any other governmental agency."

2. Georgia Legal Services Program, Inc. is organized under the laws of Georgia as a perpetual, nonprofit corporation for the purposes of providing "a comprehensive program of legal services by lawyers to needy individuals in selected areas of the State of Georgia, and for any other lawful purposes not specifically prohibited to nonprofit organizations under the applicable laws of the State of Georgia".

any decision denying remand. I suggested that the necessary element of finality might be lacking for appeal and it is.[3] There must be a final decision on the merits before the jurisdictional ruling can be appealed.

Plaintiff's counsel objected to consideration of the merits without an evidentiary hearing on the rule to show cause why the defendants should not be enjoined from engaging in the unlawful practice of law. I requested him to outline the nature of the evidence intended to be presented at the hearing on preliminary or permanent injunctive relief. His response was a lengthy chronicle of claims of defendants' barratry, champerty, solicitation, representation of persons who are not indigents, taking frivolous cases and engaging in litigation to "harass and fight the establishment".

The point is not how or in what manner defendants are improperly or unethically practicing law. Such is a matter that addresses itself solely to the disciplinary provisions and procedures of the Rules and Regulations for Organization and Government of State Bar of Georgia, Title 9, Appendix.[4] The point *is* whether the defendants are engaged in the unlawful practice of law by use of the corporate form in providing legal services to indigent persons. There is ample evidence before this Court to permit a ruling without further testimony as to two issues which I apprehend to be:

(1) Does the plaintiff have standing under Georgia law to bring an action for injunctive relief challenging the right of the defendant legal assistance corporations to provide legal services through licensed attorneys and to appear and practice in the courts?

(2) Are the defendant legal aid organizations and the attorneys employed by them engaged in practicing law contrary to the Georgia statute forbidding corporations to practice law?

Last year in the case of William A. Wehunt vs. Mary Lou Brown and Atlanta Legal Aid Society, Inc., Judge Osgood O. Williams of the Superior Court of Fulton County answered the first question in the negative and strongly indicated that the defendant Society is a charitable or benevolent corporation and as such is excepted from the operation of the statute in question. See the decision, No. B–94519, May 23, 1974.

In that case the complainant sought a permanent injunction against Atlanta Legal Aid Society, Inc. from practicing law in violation of Ga.Code Ann. § 9–402. That section makes it unlawful for any person other than a duly licensed attorney to practice law in this State and further provides that a corporation cannot render or furnish legal services. Judge Williams denied the prayer for an injunction. He ruled that the complaint failed to state a claim for relief against the defendants. No appeal was taken from his decision.

### Standing of Plaintiff to Sue

■■ In 1946 the Georgia General Assembly enacted comprehensive legisla-

---

3. Denial by a federal court of a motion to remand an action removed from a state court is not a "final decision" authorizing an appeal under 28 U.S.C. § 1291. See Lewis v. E. I. Du Pont De Nemours & Co., 183 F.2d 29 (5th Cir.); Capital Bancshares, Inc. v. North American Guaranty Insurance Company, 433 F.2d 279 (5th Cir.); 32 Am.Jur.2d Federal Practice and Procedure § 550.

4. "The power to discipline and punish members of the State Bar of Georgia for professional misconduct is vested in a State Disciplinary Board . . . ." Any judgment of the Board "suspending or disbarring a member shall require the affirmative vote of at

least six members of the Board, with not more than two negative votes". Rule 4–201. The Board may "receive and evaluate any and all written complaints against members of the State Bar." Subject to judicial review, it "shall have power to suspend, remove, or disbar members, to discipline them by public or private reprimand . . . ." Rule 4–202(a), (e). As to the inherent power of the Supreme Court of Georgia to regulate the practice of law see Ga. Bar Assoc. v. Lawyers Title Ins. Corp., 222 Ga. 657, 659, 151 S.E. 2d 718; Wallace v. Wallace, 225 Ga. 102, 166 S.E.2d 718; Fortson v. Weeks, 232 Ga. 472, 478, 208 S.E.2d 68.

tion in connection with injunctive relief in the case of charges or complaints as to unauthorized or unlawful practice of law. Ga.Code Ann. §§ 9–406 to 9–411. If the Georgia Bar Association (now State Bar of Georgia), the Judicial Council of the State[5] or any organized bar association in the State determines that any person, firm or corporation is engaged in the unlawful practice of law they or any of them "is authorized to institute in the proper superior court of this State an action or actions seeking to restrain and enjoin such person, firm, or corporation from continuing such violations or practices".

In Wehunt vs. Atlanta Legal Aid Society, Inc., *supra,* Judge Williams held that this legislation

"grants standing to enjoin unlawful or unauthorized practice only to the Georgia Bar Association, the Judicial Council, or any organized bar association of the State. (Georgia Code Annotated, Section 9–407). If an action is to be brought in this posture, it must be brought by the State Bar Association, local Bar Association, or the Judicial Council as plaintiff—not by a private citizen."[6]

Courts of Georgia possess inherent power to handle misconduct of attorneys through contempt proceedings. Tingle v. Arnold, Cate & Allen, 129 Ga. App. 134, 137, 199 S.E.2d 260. However, the right to seek to enjoin the unlawful or unauthorized practice of law is committed to the organized bar or Judicial Council of the State of Georgia. The plaintiff, Mrs. Dixon, is without power to bring such an action. Her remedy lies in the Rules and Regulations governing the conduct and dis-

ciplining of lawyers adopted pursuant to the creation of the unified State Bar in 1963 (Ga.Code Ann. § 9–701 et seq.). As Judge Williams stated in the Wehunt case,

"If plaintiff's complaint is that defendant or the attorneys employed by the defendant were engaged in the unlawful or unauthorized practice of law, he could have pursued his remedies within the available administrative disciplinary procedures; he has no standing to raise these issues in an equitable action for injunctive relief in the Superior Court."

### Unlawful practice of law by the defendant legal assistance corporations

■ "Equal justice for all under the law is meaningless unless all persons have access to the courts, and this includes those who cannot financially afford to employ private counsel. This means the rich and the poor must have equal access to the courts and must stand equally before the law and treated as equals in a court of justice." See Wehunt vs. Atlanta Legal Aid Society, Inc., *supra.*

Under § 9–402 of the Code of Georgia, only duly licensed attorneys may appear in any court in this State or make it a business to practice as an attorney and corporations are prohibited from rendering or performing legal services of any kind. However, in the same section of the Act of 1931 the prohibition is made inapplicable to "organizations organized for benevolent or charitable purposes". See § 9–403. At that time the Atlanta Legal Aid Society, Inc. was in existence. It is quite likely that the proviso was

---

5. The Judicial Council was created by the General Assembly in 1945. See Ga.Code Ann. § 81–1601 et seq. It was reestablished in 1973 with changes in its composition. See Ga.Laws, 1973, p. 288.

6. In the present case counsel for plaintiff points out that the Act of 1946 (§ 9–411) does not repeal any remedy now provided by law

or abridge the powers of the courts in such matters. This disclaimer made certain that the power and remedy of disbarment of attorneys remained in effect. Under that statute, a court may of its own motion or on the information of another institute a disbarment proceeding "in the name of the State" through the district attorney.

intended to exclude such organizations from the reach of the restrictive legislation.[7]

In the Wehunt case the Fulton County Superior Court, as mentioned, rather strongly indicated that the Atlanta Legal Aid Society, Inc. is "organized for benevolent or charitable purposes" and as such is not engaged in the unlawful corporate practice of law in view of the special exception in the 1931 statute.[8]

This Court concludes that GILS and GLSP were organized for benevolent and charitable purposes and that they are carrying out such objects in the furnishing of legal assistance to the poor and needy through licensed attorneys employed by such corporations.

At the argument of the motion for reconsideration, I brought up the matter of plaintiff's standing to maintain the action and the decision in the Wehunt case was discussed. The third defense in defendants' answer in the present case raises the issue of the standing of the plaintiff to challenge in the manner attempted the alleged unlawful practice on their part. The answer contains the standard defense as to failure to state a claim.

On the basis of the evidence before this Court, it is convinced that plaintiff has failed to establish a claim for injunctive relief and is not a proper party to do so under Ga.Code Ann. § 9–406 et seq. The prayer for an injunction is therefore denied. The temporary injunction in the Superior Court as to prosecution of the litigation pending in the Municipal Court of Savannah is dissolved.

The complaint is dismissed.

7. The 1927 Report of the Committee on Legal Aid of the Georgia Bar Association stated that during the period of early development of legal aid "the movements were almost purely philanthropic and charitable, and received little or no assistance from governmental agencies". Report of the Forty-fourth Annual Session of the Georgia Bar Association, 1927, p. 97.

8. The Georgia Corporation Act of 1968 authorizes non-profit corporations to be organized (unless specifically prohibited by other laws) for charitable or benevolent purposes. Ga.Code Ann. § 22–2201. The Georgia Professional Corporation Act of 1970 permits a "person or group of persons licensed to practice a profession in this State . . . to practice as a professional corporation by complying with the provisions of this Chapter," irrespective of any law "now prohibiting the practice of the profession by a corporation." Ga.Code Ann. § 84–5401 et seq. Of course, GILS and GLSP are non-profit corporations and were not chartered for the purpose of obtaining tax benefits which is the object of such legislation. They are not Professional Corporations. I mention that Act merely by way of illustration of modern legislative trends in the authorization, under proper circumstances, of the use of the corporate form in the practice of law.